UNITED STATES DISTRICT COURT
SOUTHERN OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
YU G. KE, SHU HUA CHEN, JIAN L. LIN, BAO J. :
CHEN, GUO Q. CHEN, JIAN Y. CHEN, JIE CHEN, :
MING H. CHEN, SHU HUI CHEN, SHU JIAN CHEN, :
SHU JIN CHEN, WEN D. CHEN, WEN Z. CHEN, XIAN :
Y. CHEN, XIANG Y. CHEN, GUO Q. CHEN, DE S. CHI, :
LIAN G. CHI, ZHAO Y. DONG, XUE Y. HUANG, BING :
X. LI, QIANG H. LI, QI H. LIAN, LI Q. LIN, MING LIN, :
XIN W. LIN, YI L. LIN, BAO G. XIE, DE K. XIE, MU L. :
XIE, RUI G. XIE, ZHI G. XIE, RUI H. YOU, YU M. YU, :
WEN R. ZHENG, and YU X. ZHOU, :                    **07-CV-2329 (MHD)**
:
                                    Plaintiffs, :
:
                    - against - :
:
SAIGON GRILL, INC. SAIGON GOURMET :
RESTAURANT INC., SAIGON SPICE INC., SAIGON :
BRASSERIE INC., SAIGON WEST INC., SIMON NGET :
a.k.a. CHANG S. NGET, MICHELLE LU NGET a.k.a. PEI :
YING NGET, LEANA NGET, RICHARD K. NGET a.k.a. :
CHANG HAO NGET, and SUNG TRUONG, :
:
                                    Defendants. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## PLAINTIFFS' POST-TRIAL MEMORANDUM


DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017

ASIAN AMERICAN LEGAL DEFENSE
    AND EDUCATION FUND
99 Hudson Street
New York, New York 10038

*Attorneys for Plaintiffs*


July 11, 2008

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT .................................................................................. 1

ARGUMENT ............................................................................................................... 3

I.     PLAINTIFFS ARE ENTITLED TO UNPAID WAGES UNDER FLSA AND
       NEW YORK LABOR LAW FOR THE ENTIRETY OF THEIR EMPLOYMENT
       AND ARE NOT BOUND BY THE STATUTES OF LIMITATIONS ............................ 3

       A.     The FLSA and New York Labor Law Statutes of Limitations Should Be
              Equitably Tolled for the Entire Period of Plaintiffs' Employment ........................ 3

       B.     If the Court Determines That Equitable Tolling Does Not Apply, Plaintiffs
              May Still Recover Minimum Wage and Overtime Compensation for Three
              Years Under FLSA and Six Years Under New York Labor Law .......................... 7

II.    PLAINTIFFS ARE ENTITLED TO UNPAID WAGES UNDER FLSA AND
       NEW YORK LABOR LAW ......................................................................................... 9

       A.     Under FLSA, Plaintiffs May Recover Unpaid Wages at the Ordinary,
              Statutorily Prescribed Minimum Wage and Overtime Rates Rather than
              the Reduced Rates that Apply to "Tipped" Employees ...................................... 9

       B.     Under New York Labor Law, Plaintiffs May Recover Unpaid Wages at
              the Reduced Rate that New York Labor Law Applies to Tipped Restaurant
              "Service Employees" ....................................................................................... 12

       C.     Plaintiffs Are Entitled to Spread-of-Hours Compensation Under New
              York Labor Law in Addition to Federal or State Minimum Wage and
              Overtime Damages ......................................................................................... 13

       D.     Plaintiffs Are Entitled to Liquidated Damages Under Both State and
              Federal Law and Prejudgment Interest Under State Law .................................. 14

              1.     *FLSA Liquidated Damages* ..................................................................... 14

              2.     *New York Labor Law Liquidated Damages* ............................................. 17

              3.     *Plaintiffs Are Entitled to Both FLSA and New York Labor Law
                     Liquidated Damages* .............................................................................. 17

              4.     *New York Prejudgment Interest* ............................................................. 19

III.    BECAUSE THEY WERE PAID BELOW THE MINIMUM WAGE,
        PLAINTIFFS ARE FURTHER ENTITLED TO THE RETURN OF MONEY
        SPENT ON TOOLS OF THE TRADE, AS WELL AS FINES AND
        KICKBACKS TAKEN FROM THEM............................................................ 19

        A.     Plaintiffs Are Entitled to Compensation for the Purchase and Maintenance
               of Bicycles and Motor Scooters They Used Primarily for the Benefit and
               Convenience of Their Employers............................................................ 19

        B.     Plaintiffs Are Entitled to the Return of Money They Were Fined by
               Defendants for Various Alleged Infractions ........................................... 23

        C.     Plaintiffs Are Entitled to the Return of Money They Paid Defendants
               When Unable to Complete Their "Sidework"......................................... 25

IV.     DEFENDANTS ARE NOT ENTITLED TO A MEAL ALLOWANCE ......................... 26

V.      MANY PLAINTIFFS ARE ENTITLED TO COMPENSATION BECAUSE
        DEFENDANTS FIRED THEM IN RETALIATION FOR UNDERTAKING TO
        FILE THIS LAWSUIT .............................................................................. 28

        A.     The Evidence Shows That Defendants Retaliated Against Plaintiffs ................. 28

        B.     Damages Are Available for All Workers Who Were Retaliated Against,
               Without Regard to Immigration Status .................................................. 32

               1.     *Backpay Is Available to Undocumented Workers in Suits Against
                      "Knowing Employers"*............................................................ 32

               2.     *Compensatory and Punitive Damages Are Available, Regardless of
                      Plaintiffs' Immigration Status*.................................................. 35

               3.     *If Necessary, Plaintiffs Will Produce Additional Information in the
                      Damages Phase of Trial*......................................................... 36

VI.     EACH INDIVIDUAL DEFENDANT IS AN EMPLOYER LIABLE FOR
        PLAINTIFFS' UNPAID WAGES ................................................................... 36

CONCLUSION .................................................................................................. 44

Plaintiffs respectfully submit this Post-Trial Memorandum in accordance with the Court's instructions at the close of trial on June 27, 2008.[1]  Using Plaintiffs' testimony as the factual basis for damage estimates, as instructed by the Court, Exhibit A to this Memorandum sets forth Plaintiffs' damages.  This Memorandum sets forth the legal bases for and methodology used in assessing and calculating damages.

<u>**PRELIMINARY STATEMENT**</u>

Plaintiffs gave credible testimony at trial, both live and through declarations, which establishes that they were underpaid by the Saigon Grill restaurants in violation of the minimum wage and overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 <u>et seq.</u> ("FLSA") and New York Labor Law, N.Y. Lab. Law § 650 <u>et seq.</u>  This testimony, which is corroborated by the limited documentary proof that Plaintiffs have been able to obtain from Defendants, establishes that Plaintiffs worked both part-time and full-time shifts—in some instances, up to 80 hours per week for wages as little as $1.60 per hour—at the Saigon Grill restaurants, made deliveries throughout the day, and engaged in sidework which was necessary to support a busy delivery operation.  The evidence at trial further shows that Defendants violated FLSA and New York Labor Law by routinely imposing fines, taking illegal kickbacks, and failing to reimburse delivery workers for the costs associated with the purchase and maintenance of bicycles and motor scooters.

Defendants failed to offer any evidence at trial to suggest that they ever notified Plaintiffs—all of whom were born in China, have very limited education, and do not speak much if any English—of the minimum wage and overtime laws, including the tip credit provision of

---

[1] Plaintiffs hereby incorporate Plaintiffs' Pretrial Memorandum of Law, certain portions of which, for relevant topics, have been restated in this Memorandum for the Court's convenience.

FLSA. Defendants' failure to attempt to comply with federal and state labor law demonstrates a reckless disregard for their legal obligations that is sufficient to establish willfulness under FLSA and New York Labor Law. The evidence shows that Defendants yet again flouted their legal obligations in March 2007 by attempting to coerce a settlement with—and then summarily firing—Plaintiffs upon learning of their intention to sue for these wage-and-hour violations.

At the close of trial, the Court instructed Plaintiffs to provide additional briefing on a number of issues, including whether an individual with managerial responsibilities, but without authority to set wages, can be held personally liable under FLSA and New York Labor Law, and the extent to which bicycles and motor scooters are tools of the trade for which Plaintiffs must be reimbursed.[2] The Post-Trial Memorandum discusses legal authority for the issues requested by the Court, as well as other disputed issues relevant to Plaintiffs' claims.

The Court also requested calculations of Plaintiffs' damages, with the instruction that Plaintiffs "should deem the hours and wages referred to in Plaintiff's [sic] declarations and in their testimony at trial as credible . . . ."[3] Plaintiffs' damage calculations are contained in Exhibit A to this Memorandum. Exhibit A begins with four lettered tabs: Tab A, which sets forth the methodology underlying the damage calculations; Tabs B and C, which summarize Plaintiffs' damages on their wage-and-hour claims under two alternative scenarios, one where the federal and state statutes of limitations are equitably tolled and the other without equitable tolling; and Tab D, which lists the damages of those Plaintiffs asserting claims for retaliation.

_____

[2] The Court also requested further briefing on the issue of collateral estoppel. Plaintiffs have reviewed the law of collateral estoppel and determined that, according to the weight of authority, the ALJ's decision in <u>Saigon Grill Rest.</u>, N.L.R.B. No. 2-CA-38252, 2008 WL 449658 (Feb. 14, 2008), is not a final agency determination that would have preclusive effect in this action.

[3] Trial Tr. 506:23-25.

Following those summary charts, Tabs 1 to 36 provide damage calculations for each Plaintiff related to wages, costs associated with bicycles and motor scooters, fines, illegal kickbacks, and retaliation, with citations to supporting evidence. Also included are notes clearly indicating where and how Plaintiffs were required to approximate their damages. Such approximations are permitted under FLSA where an employer fails to maintain required employment records. See Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88 (1946) (holding that, if the employer has failed to maintain records and provide evidence of the precise amount of work performed by employees, "the court may . . . award damages to the employee, even though the result be only approximate"); see also Reich v. S. New Eng. Telecommc'ns Corp., 121 F.3d 58, 70 n.3 (2d Cir. 1997) (holding that a district court did not err in awarding damages, even though they "might have been somewhat generous," because the award was reasonable in light of the evidence and "the difficulty of precisely determining damages when the employer has failed to keep adequate records").

## ARGUMENT

### I. PLAINTIFFS ARE ENTITLED TO UNPAID WAGES UNDER FLSA AND NEW YORK LABOR LAW FOR THE ENTIRETY OF THEIR EMPLOYMENT AND ARE NOT BOUND BY THE STATUTES OF LIMITATIONS

#### A. The FLSA and New York Labor Law Statutes of Limitations Should Be Equitably Tolled for the Entire Period of Plaintiffs' Employment

Plaintiffs seek equitable tolling of the FLSA and New York Labor Law statutes of limitations for the entirety of their employment, as reflected in the damage totals listed in Tab B of Exhibit A. Since Plaintiffs' damages on their minimum wage and overtime claims are greater under federal than state law, the "Wage & Hour Claim" column in Tab B is based primarily on FLSA damages, with an additional amount for spread-of-hours damages available only under New York Labor Law, for the entirety of Plaintiffs' employment.

3

The doctrine of equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances.    Bowers v. Transportacion Maritima Mexicana, S.A., 901 F.2d 258, 264 (2d Cir. 1990).  "The essence of the doctrine is that a statute of limitations does not run against a plaintiff who is unaware of his cause of action," especially where a defendant's conduct "concealed from the plaintiff the existence of the cause of action."    Cerbone v. Int'l Ladies' Garment Workers' Union, 768 F.2d 45, 48 (2d Cir. 1985) (citations and internal quotation marks omitted).  The Second Circuit has stated that, under these circumstances, equitable tolling is a "matter of fairness."    Miller v. Int'l Tel. & Tel. Corp., 755 F.2d 20, 24 (2d Cir. 1985).  The Second Circuit recently reaffirmed that fraudulent concealment of critical facts by the defendant is not necessary for equitable tolling, and that equitable tolling may be appropriate where, as here, the defendant has violated some regulation requiring it to inform the plaintiff of his rights.  See Valdez v. United States, 518 F.3d 173, 182-83 (2d Cir. 2008) (citing Veltri v. Bldg. Serv. 32b-J Pension Fund, 393 F.3d 318 (2d Cir. 2004)).

The statute of limitations for Plaintiffs' claims should be equitably tolled to cover the full period of their employment because Defendants failed to post a notice of workers' rights in the workplace, as required by law, as a result of which most Plaintiffs were unaware of their rights under FLSA until shortly before this suit was commenced.[4]  Under federal law, any employer subject to FLSA's minimum wage provisions must "post and keep posted a notice explaining the

---

[4] See, e.g., Zhi Gui Xie Tr. 59:23-25, 60:1-25; Bao Guo Xie Decl. ¶ 36; Bao Jian Chen Decl. ¶ 34; Bing Xing Li Decl. ¶ 28; De Shun Chi Decl. ¶ 25; Guo Jin Chen Decl. ¶ 31; Guo Qi Chen Decl. ¶ 25; Jian Le Lin Decl. ¶ 30; Jian Yun Chen Decl. ¶ 36; Jie Chen Decl. ¶ 23; Li Qiang Lin Decl. ¶ 35; Ming Hua Chen Decl. ¶ 28; Ming Lin Decl. ¶ 22; Mu Lei Xie Decl. ¶ 31; Qi Hua Lian Decl. ¶ 27; Qiang Hua Li Decl. ¶ 27; Rui Guan Xie Decl. ¶ 24; Shu Hua Chen Decl. ¶ 29; Shu Hui Chen Decl. ¶ 35; Shu Jian Chen Decl. ¶ 24; Wen Da Chen Decl. ¶ 28; Wen Rui Zheng Decl. ¶ 26; Wen Zhong Chen Decl. ¶ 37; Xiang Wei Chen Decl. ¶ 21; Xin Wei Lin Decl. ¶ 27; Xue Yong Huang Decl. ¶ 30; Yi Lan Lin Decl. ¶ 31; Yu Guan Ke Decl. ¶ 36; Yu Xing Zhou Decl. ¶ 37; Zhao Yu Dong Decl. ¶ 21.

Act . . . in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy." 29 C.F.R. § 516.4. This government-issued notice not only lists the minimum wage, but explains FLSA's "tip credit" provision and that the law prohibits discrimination or retaliation against workers who seek redress under the Act. Plaintiffs have uniformly testified to never seeing such a notice,[5] and Defendants put forth no evidence at trial that any such notice was posted at any Saigon Grill restaurant. In light of this failure, most Plaintiffs were unaware of their rights to a minimum wage and overtime pay until shortly before bringing this lawsuit, when they or their friends heard or read about similar wage-and-hour violations and lawsuits at other New York City restaurants.[6]

In Ramirez v. CSJ & Co., No. 06 Civ. 13677 (LAK), 2007 WL 1040363 (S.D.N.Y. Apr. 3, 2007), Judge Kaplan explained why equitable tolling is appropriate under precisely these circumstances:

> The . . . plaintiffs in this case were employed to make deliveries to customers for a delicatessen offering take-out service. Anyone who has lived in New York in recent decades knows, and plaintiffs in any case would be entitled to prove, that such jobs are filled by individuals at the bottom of the economic ladder, often immigrants with few skills and limited education. The ability of most to learn of their legal rights under the complex web of labor and social legislation that governs the modern workplace is not great. Thus, employers that fail to post the required notices take advantage of the defenseless in a very real way, whether out of venality or otherwise. In any case, they frustrate legislative objective of protecting those most in need of protection.

---

[5] See, e.g., Zhi Gui Xie Tr. 59:4-25; De Kui Xie Tr. 97:1-17; Bao Guo Xie Decl. ¶ 34; Bao Jian Chen Decl. ¶ 32; Bing Xing Li Decl. ¶ 26; De Shun Chi Decl. ¶ 23; Guo Jin Chen Decl. ¶ 29; Guo Qi Chen Decl. ¶ 23; Jian Le Lin Decl. ¶ 28; Jian Yun Chen Decl. ¶ 34; Jie Chen Decl. ¶ 21; Li Qiang Lin Decl. ¶ 33; Ming Hua Chen Decl. ¶ 26; Ming Lin Decl. ¶ 20; Mu Lei Xie Decl. ¶ 29; Qi Hua Lian Decl. ¶ 25; Qiang Hua Li Decl. ¶ 25; Rui Guan Xie Decl. ¶ 22; Shu Hua Chen Decl. ¶ 27; Shu Hui Chen Decl. ¶ 33; Shu Jian Chen Decl. ¶ 22; Wen Da Chen Decl. ¶ 26; Wen Rui Zheng Decl. ¶ 24; Wen Zhong Chen Decl. ¶ 35; Xian Yi Chen Decl. ¶ 36; Xiang Wei Chen Decl. ¶ 19; Xin Wei Lin Decl. ¶ 25; Xue Yong Huang Decl. ¶ 28; Yi Lan Lin Decl. ¶ 29; Yu Guan Ke Decl. ¶ 34; Yu Xing Zhou Decl. ¶ 35; Zhao Yu Dong Decl. ¶ 19.

[6] See supra n.4.

Id. at *3.

In accord with Judge Kaplan's reasoning, many courts have recognized that equitable tolling of the statute of limitations is appropriate in FLSA cases.  See, e.g., id. (denying motion to dismiss so as to permit plaintiffs to prove equitable tolling at trial); Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 369 (S.D.N.Y. 2007) (allowing plaintiffs discovery on the applicability of equitable tolling before deciding the statute of limitations and certifying class of plaintiffs who had worked for defendant over a six-year period); Baba v. Grand Central P'ship, No. 99 Civ. 5818 (TPG), 2000 WL 1808971, at *2-3 (S.D.N.Y. Dec. 8, 2000) (denying defendant's summary judgment motion as to plaintiff's equitable tolling claim where there was conflicting evidence as to whether defendants posted required minimum wage notice); Cortez v. Medina's Landscaping, No. 00 C 6320, 2002 WL 31175471, at *6 (N.D. Ill. Sept. 30, 2002) ("[T]his court holds that an employer's failure to post the notice required by 29 C.F.R. § 516.4 tolls the limitations period until the employee acquires a general awareness of his rights under the FLSA."); Henchy v. City of Absecon, 148 F. Supp. 2d 435, 439 (D.N.J. 2001); Blake v. CMB Constr., Civil No. 90-388-M, 1993 WL 840278, at *6 (D.N.H. Mar. 30, 1993); Kamens v. Summit Stainless, Inc., 586 F. Supp. 324, 328 (E.D. Pa. 1984).[7]

Many courts have likewise tolled the limitations period for other employment-related statutes where, as here, employers failed to post notices of employees' rights required by law. See, e.g., Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino, 410 F.3d 41, 46 (1st Cir. 2005); EEOC v. Ky. State Police Dep't, 80 F.3d 1086, 1096 (6th Cir. 1996); Unterreiner v. Volkswagen of Am., Inc., 8 F.3d 1206, 1213 (7th Cir. 1993); Callowhill v. Allen-Sherman-Hoff

[7] "[F]ederal district courts apply the same standard for equitable tolling of state labor law claims as for tolling FLSA claims." Ramirez v. Rifkin, No. 06 Civ. 6169 (JFB) (WDW), 2008 WL 2559376, at *9 (E.D.N.Y. June 23, 2008).

6

Co., 832 F.2d 269, 272 (3d Cir. 1987); English v. Pabst Brewing Co., 828 F.2d 1047, 1049 (4th Cir. 1987).

### B. If the Court Determines That Equitable Tolling Does Not Apply, Plaintiffs May Still Recover Minimum Wage and Overtime Compensation for Three Years Under FLSA and Six Years Under New York Labor Law

If the Court determines that equitable tolling does not apply, Plaintiffs may still recover damages for six years under New York Labor Law, N.Y. Lab. Law §§ 198(3), 663(3), and three years under FLSA, 29 U.S.C. § 255(a), as reflected in Tab C of Exhibit A. Since Plaintiffs' minimum wage and overtime damages are greater under federal law than state law, the "Wage & Hour Claim" column in Tab C includes Plaintiffs' compensatory and liquidated damages under FLSA for the period March 21, 2004 through March 21, 2007, and Plaintiffs' compensatory and liquidated damages under New York Labor Law for the period March 21, 2001 through March 20, 2004, plus New York spread-of-hours damages for the full six-year period.[8]

While the statute of limitations under FLSA is ordinarily two years, it may be extended to three years if the cause of action arises out of a "willful" violation of the Act. 29 U.S.C. § 255(a). The Supreme Court has held that a willful violation is one where "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).

Defendant Simon Nget knew about the minimum wage and overtime laws from jobs he held before opening the Saigon Grill, but he made no effort to determine whether his pay practices complied with FLSA.[9] This is consistent with the Saigon Grill's more general practice

---

[8] Plaintiffs' Complaint was filed on March 21, 2007. See Amended Joint Pretrial Order, Stipulations of Fact ¶ 1.

[9] See Simon Nget Dep. 63:23-25, 64:6-10, 23-25, 65:1-6, 66:19-21, 158:19-159:9; 175:18-176:9; 184:20-185:7; Simon Nget Tr. 348:1-14. All deposition testimony cited in this Post-Trial Memorandum has been previously designated by Plaintiffs and received in evidence without objection.

of ignoring its legal obligations—for example, by not requesting I-9 forms[10] and requiring employees to cash restaurant checks and return the proceeds.[11]  At the March 2, 2007 meeting where many Plaintiffs were fired for refusing to waive their FLSA rights, Simon Nget told Plaintiffs, "[i]f you want to talk about law, none of us here do things according to the law, including me."[12]  Defendant Michelle Nget claims that she had no knowledge of the minimum wage and overtime laws,[13] despite her many years in the restaurant industry and her managerial position within Saigon Grill.  Such professed ignorance amounts to reckless disregard sufficient to create a willful violation.  Cf. Herman v. RSR Sec. Servs., Ltd., 172 F.3d 132, 141-42 (2d Cir. 1999) (affirming a finding of willfulness where the defendant, though possibly lacking actual knowledge because he did not directly supervise, hire or fire, or set the wages of plaintiffs, ignored illegal tax treatment of plaintiffs and made no effort to determine FLSA compliance).  That Defendants would open a series of ever-larger restaurants without undertaking to determine whether their policies complied with federal labor law demonstrates, at the very least, "reckless disregard" tantamount to willfulness.  See Breen v. Concrete by Wagner, Inc., No. 98 C 3611, 1999 WL 1016267, at *13 (N.D. Ill. Nov. 4, 1999) (granting summary judgment against

---

[10] See, e.g., Zhi Gui Xie Tr. 26:9-14; Bao Guo Xie Decl. ¶ 38; Guo Jin Chen Decl. ¶ 34; Guo Qi Chen Decl. ¶ 28; Jian Le Lin Decl. ¶ 32; Jian Yun Chen Decl. ¶ 38; Jie Chen Decl. ¶ 26; Li Qiang Lin Decl. ¶ 38; Lian Guan Chi Decl. ¶ 31; Ming Lin Decl. ¶ 24; Mu Lei Xie Decl. ¶ 34; Rui Guan Xie Decl. ¶ 27; Shu Hua Chen Decl. ¶ 32; Shu Hui Chen Decl. ¶ 37; Shu Jian Chen Decl. ¶ 27; Wen Da Chen Decl. ¶ 31; Wen Zhong Chen Decl. ¶ 40; Xin Wei Lin Decl. ¶ 30; Xue Yong Huang Decl. ¶ 32; Yu Guan Ke Decl. ¶ 38; Yu Xing Zhou Decl. ¶ 40; Zhao Yu Dong Decl. ¶ 24.

[11] See, e.g., De Kui Xie Tr. 88:2-89:10; Bao Guo Xie Tr. 297:12-299:13; Bao Guo Xie Decl. ¶ 14; Bao Jian Chen Tr. 253:25-254:17; Bao Jian Chen Decl. ¶ 11; Li Qiang Lin Tr. 263:1-11; Jian Yun Chen Tr. 150:21-152:25; Jian Yun Chen Decl. ¶ 12; Li Qiang Lin Decl ¶ 14; Shu Hui Chen Tr. 168:9-21; Shu Hui Chen Decl. ¶ 12; Yu Ming Yu Tr. 314:12-315:9; Yu Ming Yu Decl. ¶ 12.

[12] Yu Guan Ke Decl. ¶ 29.

[13] See Michelle Nget Dep. 140:9-12, 140:23-141:18.

8

defendant that knew of FLSA, was "engaged in business as a concrete company, hiring concrete laborers," but never "investigated the basic content and requirements of the FLSA").

## II.  PLAINTIFFS ARE ENTITLED TO UNPAID WAGES UNDER FLSA AND NEW YORK LABOR LAW

### A.  Under FLSA, Plaintiffs May Recover Unpaid Wages at the Ordinary, Statutorily Prescribed Minimum Wage and Overtime Rates Rather than the Reduced Rates that Apply to "Tipped" Employees

It is undisputed that, pursuant to FLSA, Plaintiffs are entitled to the minimum wage and overtime compensation.  See 29 U.S.C. §§ 206 (minimum wage), 207 (overtime pay). Defendants seek to gain the benefit of the tip credit provision of FLSA, which permits employers to pay tipped employees at an hourly rate below the minimum wage if the employees' wages and tips, added together, meet or exceed the minimum wage.  Id. § 203(m).[14]  To take advantage of this "tipped minimum wage," however, an employer must first inform the employee of the statutory requirements related to the tip credit and allow the employee to keep all tips received, with an exception made for the pooling of tips among employees who regularly receive tips.  Id. "The two prerequisites that the employer must fulfill to be eligible for the tip credit are strictly construed, and must be satisfied even if the employee received tips at least equivalent to the minimum wage." Chung v. New Silver Palace Rest., Inc., 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002) (citing Reich v. Chez Robert, Inc., 28 F.3d 401, 404 (3d Cir. 1994); Martin v. Tango's Restaurant, Inc., 969 F.2d 1319, 1323 (1st Cir. 1992)).

An employer bears the burden of showing that it has satisfied the notice requirement of the tip credit provision by, "for example, providing employees with a copy of § 203(m) and informing them that their tips will be used as a credit against the minimum wage as permitted by

---

[14] Defendants cannot make this claim as to Plaintiff Shu Jin Chen, who was employed as a packer at the Saigon Grill, Shu Jin Chen Stip. ¶¶ 1-3, and, accordingly, did not receive tips.

law." <u>Chan v. Sung Yue Tung Corp.</u>, No. 03 Civ. 6048 (GEL), 2007 WL 313483, at *19 (S.D.N.Y. Feb. 1, 2007).  In finding that a restaurant had failed to provide proper notice in <u>Chan</u>, Judge Lynch observed that the restaurant did not post any notice for a long period of time after it opened; posted the notice in English, a language few of the plaintiffs could read; and posted the notice "in a relatively inconspicuous area." <u>Id.</u>

Other cases outside the Second Circuit demonstrate that, at a bare minimum, employers must give "notice to employees of the employer's intention to treat tips as satisfying part of the employer's minimum wage obligations." <u>Tango's Restaurant</u>, 969 F.2d at 1322; <u>see also</u> <u>Kilgore v. Outback Steakhouse</u>, 160 F.3d 294, 298 (6th Cir. 1998) (holding that "an employer must inform its employees of its intent to take a tip credit toward the employer's minimum wage obligation").  No matter how notice is defined, it is premised upon acknowledgement and understanding of the employer's minimum wage obligations.  Several courts of appeals have observed that where this requirement is not met, lower courts lack discretion to count tips earned by employees against their recoverable damages.  <u>See, e.g.</u>, <u>Tango's Restaurant</u>, 969 F.2d at 1323 ("If the penalty for omitting notice appears harsh, it is also true that notice is not difficult for the employer to provide."); <u>Chez Roberts</u>, 28 F.3d at 404 ("When the employer has not notified employees that their wages are being reduced pursuant to the Act's tip-credit provision, the district court may not equitably reduce liability for back wages to account for tips actually received."); <u>Barcellona v. Tiffany English Pub, Inc.</u>, 597 F.2d 464, 467-68 (5th Cir. 1979) (holding that where a restaurant did not tell waiters that a tip credit was being deducted from their wages, "the district court properly found that the employees were entitled to the full minimum wage for every hour" at issue); <u>Richard v. Marriott Corp.</u>, 549 F.2d 303, 305 (4th Cir. 1977) (disallowing partial tip credit for employer based on "a vague sense of fairness").

In this case, there is no evidence that Defendants ever gave Plaintiffs notice of FLSA's tip credit provision. Indeed, Defendants never told Plaintiffs about the minimum wage, let alone that Defendants would count tips against their minimum wage obligations.[15] It is clear that Defendants had no interest in doing so, as they paid many of the Plaintiffs at rates that are even lower than the reduced minimum wage rates applicable to tipped employees under federal and state law. Plaintiffs testified that no notices regarding the tip credit provision were posted at any of the Saigon Grill restaurants—a point on which Defendants offered no contrary evidence at trial.[16] Accordingly, Plaintiffs did not receive notice of the tip credit provision and are entitled to recover the full difference between the wages paid and the ordinary minimum wage, not merely the difference between the wages paid and the "tipped minimum wage."

For these reasons, each Plaintiff's claim for damages resulting from Defendants' failure to comply with FLSA's minimum wage and overtime provisions is based on the ordinary, statutorily prescribed minimum wage and not the lower "tipped minimum wage." This wage, in accordance with the methodology employed by Judge Lynch in <u>Chan</u>, incorporates "the applicable New York minimum wage for all hours after January 1, 2005, when New York's rate was increased above the federal minimum wage." 2007 WL 313483, at *25 (citing 29 U.S.C.

---

[15] <u>See, e.g.</u>, Zhi Gui Xie Tr. 59:4-22; De Kui Xie Tr. 97:18-25; Bao Guo Xie Decl. ¶ 33; Bao Jian Chen Decl. ¶ 31; Bing Xing Li Decl. ¶ 25; De Shun Chi Decl. ¶ 22; Guo Jin Chen Decl. ¶ 28; Guo Qi Chen Decl. ¶ 22; Jian Le Lin Decl. ¶ 27; Jian Yun Chen Decl. ¶ 33; Jie Chen Decl. ¶ 20; Li Qiang Lin Decl. ¶ 32; Lian Guan Chi Decl. ¶ 28; Ming Hua Chen Decl. ¶ 25; Ming Lin Decl. ¶ 19; Mu Lei Xie Decl. ¶ 28; Qi Hua Lian Decl. ¶ 24; Qiang Hua Li Decl. ¶ 24; Rui Guan Xie Decl. ¶ 21; Shu Hua Chen Decl. ¶ 26; Shu Hui Chen Decl. ¶ 32; Shu Jian Chen Decl. ¶ 21; Wen Da Chen Decl. ¶ 25; Wen Rui Zheng Decl. ¶ 23; Wen Zhong Chen Decl. ¶ 34; Xiang Wei Chen Decl. ¶ 20; Xian Yi Chen Decl. ¶ 35; Xin Wei Lin Decl. ¶ 24; Xue Yong Huang Decl. ¶ 27; Yi Lan Lin Decl. ¶ 29; Yu Guan Ke Decl. ¶ 33; Yu Ming Yu Decl. ¶ 32; Yu Xing Zhou Decl. ¶ 34; Zhao Yu Dong Decl. ¶ 18.

[16] <u>See</u> <u>supra</u> n.4.

§ 218(a)).[17]  These assumptions were used in calculating Plaintiffs' compensatory and liquidated damages under FLSA, which are reflected in each "Wage & Hour Claim" column in Tabs B (assuming equitable tolling and FLSA damages for the entirety of Plaintiffs' employment) and C (assuming FLSA damages for three years) of Exhibit A.

> **B. Under New York Labor Law, Plaintiffs May Recover Unpaid Wages at the Reduced Rate that New York Labor Law Applies to Tipped Restaurant "Service Employees"**

Unlike FLSA, New York Labor Law does not require employers to satisfy a notice requirement before paying tipped employees a lower minimum wage.  Accordingly, the minimum wage rate that applies to Plaintiffs under New York Labor Law is a reduced minimum wage rate that is applicable under state law to "service employees" in the restaurant industry who receive tips.  N.Y. Comp. Codes R. & Regs. tit. 12, §§ 137-3.3, 137-1.4.  Plaintiffs' state-law overtime claims for this period also utilize the reduced "service employee" rate because the regulations require that overtime be paid "at a wage rate of 1 1/2 times the employee's regular rate for hours worked in excess of 40 hours in one workweek."  See N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.3.

Since Plaintiffs' compensatory damages are greater under federal law than state law, Plaintiffs seek the reduced "service employee" minimum wage under state law only to the extent that the Court does not equitably toll the federal statute of limitations.  The reduced state rate is used to calculate Plaintiffs' New York Labor Law compensatory and liquidated damages for the period March 21, 2001 through March 20, 2004, as reflected in the "Wage & Hour Claim" column in Tab C of Exhibit A.

---

[17] Plaintiffs request the opportunity to provide revised damage calculations should the Court decide not to incorporate the applicable New York minimum wage for all hours after January 1, 2005 and to instead apply the federal minimum wage for this period.

12

**C. Plaintiffs Are Entitled to Spread-of-Hours Compensation Under New York Labor Law in Addition to Federal or State Minimum Wage and Overtime Damages**

New York Labor Law provides that any restaurant employee whose workday is longer than ten hours "shall receive one hour's pay at the basic minimum hourly wage rate." N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.7. This "spread of hours" is defined as the number of hours from the time an employee starts his workday until the time the employee finishes his workday, including both working time and non-working time (e.g., lunch breaks or off-time between split shifts). Id. § 137-3.11. Both the regulations and cases make clear that an employee is entitled to an extra hour's pay irrespective of whether the employee's spread of hours includes non-working time. See, e.g., Chan, 2007 WL 313483, at *21 (explaining that restaurant employees are entitled to spread of hours for each workday in which "(a) the spread of hours exceeds 10 hours; or (b) there is a split shift; or (c) both situations occur") (quoting N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4).

Courts have routinely concluded that, under New York law, plaintiffs can recover spread-of-hours wages in addition to their federal or state minimum wage and overtime claims. See, e.g., Yang v. ACBL Corp., 427 F. Supp. 2d 327, 343 (S.D.N.Y. 2005) (plaintiffs recovered overtime and liquidated damages under FLSA and New York law, in addition to spread-of-hours damages); see also Liu v. Jen Chu Fashion Corp., No. 00 Civ. 4221 (RJH) (AJP), 2004 WL 33412 (S.D.N.Y. Jan. 7, 2004). For tipped "service employees" like Plaintiffs, this extra hour's pay is at the ordinary New York minimum wage rate—not the reduced rates at which their base and overtime wage may be calculated. N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.7.

In this case, Defendants have conceded that Plaintiffs were not paid spread-of-hours compensation, but claim that Plaintiffs are not entitled to such payment because they never worked more than seven hours in a day. See Amended Joint Pretrial Order, Defendants'

13

Defenses To Be Tried ¶ 8. However, the overwhelming evidence proves that numerous Plaintiffs worked shifts in excess of ten hours on a routine basis.[18] Plaintiffs are therefore entitled to spread-of-hours compensation for each shift they worked at Saigon Grill that exceeded ten hours.

Since Plaintiffs may recover spread-of-hours compensation in addition to their federal or state minimum wage and overtime claims, the "Wage & Hour Claim" column in Tab B of Exhibit A (assuming equitable tolling) includes spread-of-hours compensation and liquidated damages for the entirety of Plaintiffs' employment. Tab C of Exhibit A (assuming no equitable tolling) includes spread-of-hours compensation and liquidated damages for the period of March 21, 2001 through March 21, 2007.

### D. Plaintiffs Are Entitled to Liquidated Damages Under Both State and Federal Law and Prejudgment Interest Under State Law

#### 1. FLSA Liquidated Damages

An employer who violates FLSA is liable for the unpaid wages and an additional equal amount as liquidated damages. 29 U.S.C. § 216(b). The employer may not be liable for liquidated damages if it demonstrates that its actions were in good faith and that it had reasonable grounds for believing its actions or omissions did not violate FLSA. 29 U.S.C. § 260. The Second Circuit has explained that "the employer bears the burden of establishing, by plain and substantial evidence, subjective good faith and objective reasonableness. . . . The burden, under 29 U.S.C. § 260, is a difficult one to meet, however, and 'double damages are the norm, single damages the exception.'" S. New Eng. Telecommc'ns Corp., 121 F.3d at 71 (citations and

---

[18] See, e.g., Pls.' Ex. 2; Zhi Gui Xie Tr. 28:4-13; De Kui Xie Tr. 86:4-15; Bao Guo Xie Decl. ¶ 8; Bao Jian Chen Decl. ¶ 7; Bing Xing Li Decl. ¶ 7; De Shun Chi Decl. ¶ 8; Guo Qi Chen Decl. ¶¶ 6, 8; Jian Le Lin Decl. ¶ 7; Jian Yun Chen Decl. ¶¶ 8, 9; Li Qiang Lin Decl. ¶¶ 8-9; Lian Guan Chi Decl. ¶ 8; Mu Lei Xie Decl. ¶p 6-7; Qi Hua Lian Decl. ¶¶ 7-8; Rui Guan Xie Decl. ¶ 7; Shu Hua Chen Decl. ¶¶ 7-8; Shu Hui Chen Decl. ¶ 8-9; Shu Jian Chen Decl. ¶¶ 7-8; Wen Da Chen Decl. ¶ 8; Wen Rui Zheng Decl. ¶ 7; Wen Zhong Chen Decl. ¶ 9; Xian Yi Chen Decl. ¶¶ 7-9; Xin Wei Lin Decl. ¶ 7; Xue Yong Huang Decl. ¶¶ 7, 10; Yu Guan Ke Decl. ¶ 8; Yu Xing Zhou Decl. ¶ 8.

internal quotation marks omitted); <u>see also</u> <u>Brock v. Wilamowsky</u>, 833 F.2d 11, 20 (2d Cir. 1987) ("The Act does not authorize the court to decline to award liquidated damages, in whole or in part, unless the employer has established its good-faith, reasonable-basis defense.").

Under the Federal Rules of Civil Procedure, a party "must affirmatively state any avoidance or affirmative defense" in a responsive pleading. Fed. R. Civ. P. 8(c)(1). The "[f]ailure to plead an affirmative defense in the answer results in the waiver of that defense and its exclusion from the case." <u>United States on behalf of Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co.</u>, 889 F.2d 1248, 1253 (2d Cir. 1989) (citations and internal quotations omitted); <u>see also</u> <u>Doubleday & Co. v. Curtis</u>, 763 F.2d 495, 503 (2d Cir. 1985) ("[Rule 8(c)] is intended to notify a party of the existence of certain issues, and its mandatory language has impelled us to conclude that a party's failure to plead an affirmative defense bars its invocation at later stages of the litigation.").

Rule 8 of the Federal Rules of Civil Procedure provides a long, but non-exclusive, list of affirmative defenses that must be pleaded in an answer. Fed. R. Civ. P. 8(c)(1). The good-faith defense, by its language, is one such affirmative defense that the defendant must plead and prove, as it imposes on the employer the burden of "show[ing] to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of [FLSA]." 29 U.S.C. § 260. Accordingly, Defendants' failure to raise this defense in their Answer constitutes a waiver.

Defendants' pleading deficiency is consistent with their failure to put forth any evidence at trial that would support a good-faith defense. To establish good faith, an employer must provide "plain and substantial evidence of at least an honest intention to ascertain what the Act requires and to comply with it." <u>Wilamowsky</u>, 833 F.2d at 19; <u>accord</u> <u>RSR Sec. Servs.</u>, 172 F.3d

at 142 ("To establish good faith, the employer must take active steps to ascertain the dictates of the FLSA and then act to comply with them."). Because of the requirement that an employer take "active steps" to determine its obligations under the law, it is well established that "[i]gnorance of FLSA requirements is insufficient to establish good faith." Tlacoapa v. Carregal, 386 F. Supp. 2d 362, 368 (S.D.N.Y. 2005); accord Pavia v. Around the Clock Grocery, Inc., No. 03 CV 6465 (ERK), 2005 WL 4655383, at *7 (E.D.N.Y. Nov. 15, 2005); see also RSR Sec. Servs., 172 F.3d at 142 (finding good faith defense not satisfied "where the employer has knowledge of his pay practices but is ignorant of the requirements of the FLSA").

In this case, there is no evidence that Defendants made any effort to ascertain their responsibilities under FLSA. Defendant Simon Nget, though generally aware of the minimum wage and overtime pay from his own work history, conceded at his deposition that he did not consider the minimum wage when deciding how much to pay his employees.[19] There is no evidence that he undertook any effort to ascertain the requirements of FLSA, and insofar as he thinks he has done nothing illegal, that belief is not based on reason or good faith. Moreover, to the extent other Defendants profess ignorance as to the minimum wage and overtime laws,[20] it is impossible for them to demonstrate that they had a reasonable belief that they were in compliance with the law. Since Defendants' actions are inconsistent with a finding of good faith, such an affirmative defense fails as a matter of law.

---

[19] Simon Nget Dep. 158:19-159:9; 164:15-24.

[20] In her deposition, Defendant Michelle Nget testified that she had heard of the minimum wage and overtime laws only recently. See Michelle Nget Dep. 140:9-13, 140:23-141:18. In addition, Defendant Sung Truong, also known as Tony, stated in his deposition that he had never seen minimum wage or overtime notices in the restaurant. See Sung Truong Dep. 96:13-15.

2.  *New York Labor Law Liquidated Damages*

New York Labor Law allows a worker to recover 25 percent of his unpaid wages as liquidated damages where his employer's violation was willful.  N.Y. Lab. Law §§ 198(1-a), 663(1).   Since, as discussed <u>supra</u> in connection with the FLSA statute of limitations, Defendants' wage-and-hour violations were willful, Plaintiffs are entitled to liquidated damages under New York Labor Law.  <u>See</u> <u>Moon v. Kwon</u>, 248 F. Supp. 2d 201, 235 (S.D.N.Y. 2002) ("[T]he standard for willfulness for purposes of the FLSA statute of limitations does not appreciably differ from the standard applicable under New York law when determining whether to award liquidated damages . . . .").

3.  *Plaintiffs Are Entitled to Both FLSA and New York Labor Law Liquidated Damages*

Plaintiffs are entitled to liquidated damages under both FLSA and New York Labor Law for the same time periods because these damages, though sharing the same name, serve fundamentally different purposes.  <u>See</u> <u>Kim v. 167 Nail Plaza</u>, No. 05 Civ. 8560 (GBD), 2008 WL 2676598, at *2-4 (S.D.N.Y. Jul. 7, 2008) (granting FLSA liquidated damages and New York Labor Law liquidated damages for wage-and-hour violations); <u>Renteria v. Italia Foods, Inc.</u>, No. 02 C 495, 2003 WL 21995190, at *5 (N.D. Ill. Aug. 21, 2003) (granting FLSA liquidated damages and finding that issue of fact remained for trial as to availability of state law punitive damages for wage-and-hour violations).

Liquidated damages under FLSA are the functional equivalent of prejudgment interest; they are "not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA."  <u>RSR Sec. Servs.</u>, 172 F.3d at 142; <u>see also</u> <u>S. New Eng. Telecommc'ns Corp.</u>, 121 F.3d at 71 ("Liquidated damages under the FLSA are considered compensatory rather than punitive in nature.").

Because FLSA liquidated damages and prejudgment interest are functional equivalents, a plaintiff may not recover both.  See Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 715 (1945) ("To allow an employee to recover the basic statutory wage and liquidated damages, with interest, would have the effect of giving an employee double compensation for damages arising from delay in the payment of the basic minimum wages.").  The compensatory nature of FLSA liquidated damages is further underlined by the allocation of the burden of proof to the defendant, who must make an affirmative showing of good faith to avoid liability.  Wilamowsky, 833 F.2d at 20.

Liquidated damages under New York Labor Law, by contrast, are punitive in nature; they "'constitute a penalty' to deter an employer's willful withholding of wages due."  Reilly v. NatWest Mkts. Group, Inc., 181 F.3d 253, 265 (2d Cir. 1999) (quoting Carter v. Frito-Lay, Inc., 74 A.D.2d 550, 551 (1st Dep't 1980)).  Accordingly, the burden of proof lies with the plaintiff to make an affirmative showing that the employer's conduct was "willful."  Ayres v. 127 Rest. Corp., 12 F. Supp. 2d 305, 309 (S.D.N.Y. 1998).

The Second Circuit has held that a plaintiff may recover both New York Labor Law liquidated damages and prejudgment interest "because [they] serve fundamentally different purposes."  Reilly, 181 F.3d at 265.  Plaintiffs urge this Court to apply the reasoning of Reilly and award liquidated damages under both FLSA and New York Labor Law, as the two types of damages—both clearly warranted, for the reasons set forth supra—serve fundamentally different purposes, one compensatory and the other punitive.

The "Wage & Hour Claim" column in Tab B of Exhibit A (assuming equitable tolling) includes FLSA liquidated damages for the entirety of Plaintiffs' employment and New York Labor Law liquidated damages deriving from Plaintiffs' spread-of-hours damages.  The "Wage

& Hour Claim" column in Tab C (assuming three years of FLSA damages) includes FLSA liquidated damages only for the period during which Plaintiffs are seeking FLSA minimum wage and overtime damages (March 21, 2004 through March 21, 2007), and New York Labor Law liquidated damages for the three-year period during which Plaintiffs are seeking New York Labor Law minimum wage and overtime damages (March 21, 2001 through March 20, 2004) and the six-year period for which Plaintiffs seek spread-of-hours damages. Tabs B and C both contain an additional column, entitled "Additional New York Liquidated Damages," which includes Plaintiffs' liquidated damages under New York Labor Law, using New York Labor Law wage rates, for periods during which Plaintiffs are seeking compensatory and liquidated damages under FLSA related to their minimum wage and overtime claims.

### 4.  *New York Prejudgment Interest*

Plaintiffs are also entitled to prejudgment interest, at a statutory rate of 9 percent, on any award of damages under New York Labor Law for which Plaintiffs will not also receive liquidated damages under FLSA.  See N.Y. C.P.L.R. §§ 5001, 5004.  Plaintiffs respectfully request an opportunity, in the event that a judgment is rendered in their favor, to submit additional papers to aid in the computation of prejudgment interest.

## III.  BECAUSE THEY WERE PAID BELOW THE MINIMUM WAGE, PLAINTIFFS ARE FURTHER ENTITLED TO THE RETURN OF MONEY SPENT ON TOOLS OF THE TRADE, AS WELL AS FINES AND KICKBACKS TAKEN FROM THEM

### A.  Plaintiffs Are Entitled to Compensation for the Purchase and Maintenance of Bicycles and Motor Scooters They Used Primarily for the Benefit and Convenience of Their Employers

An employer may satisfy its minimum-wage obligations only by making payments "finally and unconditionally" or "free and clear."  29 C.F.R. § 531.35.  Where an employer fails to reimburse employees for employment-related expenses, it is "equivalent to the employer paying for [those] expenses and then improperly deducting them from the employees' pay . . . .

19

This concept is known as a <u>de facto</u> deduction." <u>De Luna-Guerrero v. The North Carolina</u> <u>Grower's Ass'n</u>, 338 F. Supp. 2d 649, 656 (E.D.N.C. 2004); <u>see also</u> <u>Arriaga v. Fla. Pac. Farms,</u> <u>L.L.C.</u>, 305 F.3d 1228, 1228 n.11 (11th Cir. 2002).  Accordingly, if such expenses are borne by the employee, they are "deducted from the cash wage to determine compliance with the FLSA minimum." <u>Rivera v. The Brickman Group, Ltd.</u>, Civ. No. 05-1518, 2008 WL 81570, at *7 (E.D. Pa. Jan. 7, 2008); <u>see also</u> <u>Arriaga</u>, 305 F.3d at 1236.

Employment-related expenses that may not reduce an employee's wages below the statutory minimum include "facilities" that are "primarily for the benefit or convenience of the employer." 29 C.F.R. § 531.3(d)(1).  The Department of Labor has found that "tools of the trade" are such items.  29 C.F.R. § 531.3(d)(2).  Specifically, the regulations promulgated under FLSA state:

> If it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act.

29 C.F.R. § 531.35.[21]  While the regulations provide no further definition, and Plaintiffs have been unable to locate any authority specifically addressing bicycles or motorcycles, numerous courts have found more generally that a transportation vehicle may be a "tool of the trade." <u>See</u> <u>Brennan v. Modern Chevrolet Co.</u>, 363 F. Supp. 327, 333 (N.D. Tex. 1973), <u>aff'd</u>, 491 F.2d 1271 (5th Cir. 1974); <u>see also</u> <u>Herman v. Express Sixty-Minutes Delivery Services, Inc.</u>, 161 F.3d 299, 303 (5th Cir. 1998) ("[D]rivers were required to purchase or lease all the necessary tools of the

---

[21] Defendants' obligations under New York Labor Law are similar. <u>See</u> N.Y. Comp. Codes R. & Regs. tit. 12, § 137-2.5(b) ("The minimum wage shall not be reduced by expenses incurred by an employee in carrying out duties assigned by his employer."); <u>Pachter v. Bernard Hodes Group, Inc.</u>, No. 03 Civ. 10239 (RPP), 2005 WL 2063838, at *6-7 (S.D.N.Y. Aug. 25, 2005).

trade including a vehicle [and] automobile insurance . . . .").  The court in <u>Modern Chevrolet</u>

reasoned that

> [t]he very nature of [plaintiff's] duties as a car salesman would require his possession and use of an automobile, even on personal business, and that the business of his employer would suffer if this were not the case.  The automobiles furnished in this case can properly be termed as tools of the trade useful and used by the salesmen in the conduct of their duties and necessary to the conduct of the defendant's business.

363 F. Supp. at 333.[22]

The evidence at trial has shown that bicycles were used and specifically required for

Plaintiffs' delivery work,[23] and that Defendants did not reimburse Plaintiffs for these costs.[24]

_____

[22] Defense counsel contended in his closing statement that the definition of "tools of the trade" is limited to items like hammers, yet could provide the Court with no meaningful distinction between hammers and bicycles, stating simply that "[n]obody supplies on Asian restaurants or even other restaurants that have delivery, supply delivery bicycles."  Trial Tr. 496:24-498:7.

Defendants may argue in post-trial briefing that Plaintiffs purchased and maintained their bicycles and motor scooters primarily for their own personal use.  While bicycles and motor scooters are the types of items that can be used outside the workplace, there is no evidence in the record to contradict Plaintiffs' testimony that their bicycles were used primarily for their employment.  Plaintiffs were not even cross-examined on the issue.  Courts have found that limited personal advantage or use will not prevent a finding that an expense was incurred primarily for the benefit of the employer.  <u>See, e.g.</u>, <u>Modern Chevrolet</u>, 363 F. Supp. at 333 (holding that car salesman's use of an automobile was primarily for the benefit of the employer despite extensive personal use); <u>see also</u> <u>Arriaga</u>, 305 F.3d at 1236 (holding that point-of-hire transportation was primarily for the benefit of the employer); <u>Masters v. Md. Mgmt. Co.</u>, 493 F.2d 1329, 1331-34 (4th Cir. 1974) (holding that costs of lodging were not permissible deductions because the employee resided in the location primarily for the benefit of the employer); <u>Rivera</u>, 2008 WL 81570, at *10-11 (holding that the cost of transportation from remote points of hire and workers' representative fees were "primarily for the benefit of the employer").

[23] <u>See, e.g.</u>, Zhi Gui Xie Tr. 62:25, 63:1-16; De Kui Xie Tr. 98:1-3, Qi Hua Lian Tr. 131:2-4, Qi Hua Lian Decl. ¶¶ 14-15; Yi Lan Lin Tr. 170:6-9; Yu Xing Zhou Tr. 174:10-14; Wen Da Chen Tr. 185:6-12; Shu Hua Chen Tr. 199:15-17; Wen Rui Zheng Tr. 227:5-7, Wen Rui Zheng Decl. ¶¶ 14-15; ; Xian Yi Chen Tr. 229:2-4; Qiang Hua Li Tr. 246:25, 247:1; Bao Jian Chen Tr. 254:24-25, 255:1; Li Qiang Lin Tr. 265:2-4; Mu Lei Xie Tr. 307:10-11; Yu Ming Yu Tr. 312:22-25, 313:1-6, Bao Guo Xie Decl. ¶ 18; Guo Jin Chen Decl. ¶¶ 15-16; Wen Zhong Chen Decl. ¶¶ 17-18; Xue Yong Huang Decl. ¶¶ 15-16; Yu Guan Ke Tr. 321:16-20; Yu Ming Yu Decl. ¶¶ 16-17; Yu Xing Zhou Decl. ¶¶ 16-17.

[24] <u>See, e.g.</u>, Zhi Gui Xie Tr. 64:15-23; De Kui Xie Tr. 98:16-18; Xin Wei Lin Tr. 142:4-15; Bao Guo Xie Decl. ¶¶ 21-22; Bao Jian Chen Decl. ¶¶ 17-18; Bing Xing Li Decl. ¶¶ 16-17; De Shun Chi Decl. ¶¶ 17-18; Guo Jin Chen Decl. ¶¶ 18-19; Guo Qi Chen Decl. ¶¶ 15-16; Jian Le Lin Decl. ¶¶ 17-18; Jian Yun Chen Decl. ¶¶ 18-19; Jie Chen Decl. ¶¶ 13-14; Li Qiang Lin Decl. ¶ 20; Lian Guan Chi Decl. ¶¶ 17-18; Ming Hua Chen Decl. ¶¶ 15-16; Ming Lin Decl. ¶ 14; Mu Lei Xie Decl. ¶¶ 16-17; Qi Hua Lian Decl. ¶¶ 17-18; Qiang Hua Li Decl. ¶¶ 15-16; Rui Guan Xie Decl. ¶¶ 15-16; Shu Hua Chen Decl. ¶¶ 17-18; Shu Hui Chen Decl. ¶¶ 18-19; Shu Jian Chen Decl. ¶¶ 16-17; Wen Da Chen Decl. ¶¶ 17-18; Wen Rui Zheng Decl. ¶¶ 17-18; Wen Zhong Chen Decl. ¶¶ 20-21; Xiang Wei Chen (…continued)

21

Defendant Simon Nget has conceded that it was a practical necessity for Plaintiffs to use bicycles in order to make deliveries promptly.[25]  The Amsterdam location, for instance, offered delivery service to customers living within at least a fifty-four block stretch of the west side of Manhattan, as well as to customers living near the former Second Avenue location on the east side of Manhattan.[26]  Without a team of delivery workers riding swiftly on bicycles, Defendants' business surely would have suffered.  As Plaintiff Zhi Gui Xie testified at trial, during the "busy times," when the majority of Saigon Grill's customers were ordering lunch or dinner, he would often return from each delivery to "find another order waiting."[27]  Many Plaintiffs also used motor scooters,[28] which enabled Defendants to offer delivery service to such a large area in Manhattan.  If Plaintiffs had made deliveries on foot, not only would customers' food have quickly gotten cold, but Defendants would have needed to hire many more delivery workers to adequately service an equivalent delivery volume.

---

(continued…)

Decl. ¶¶ 15-16; Xian Yi Chen Decl. ¶¶ 18-19; Xin Wei Lin Decl. ¶¶ 14-15; Xue Yong Huang Decl. ¶¶ 18-19; Yi Lan Lin Decl. ¶¶ 17-18; Yu Guan Ke Decl. ¶¶ 21-22; Yu Ming Yu Decl. ¶¶ 19-20; Yu Xing Zhou Decl. ¶¶ 19-20; Zhao Yu Dong Decl. ¶¶ 15-16.

[25] See Simon Nget Tr. 369:11.

[26] See Simon Nget Tr. 359:15-21; Pls.' Ex. 1.

[27] Zhi Gui Xie Tr. 42:7-9.

[28] Plaintiff Yu Ming Yu testified that, in order to work at Saigon Grill, he was "required" to have a motor scooter.  See Yu Ming Yu Tr. 312:1-313:9; Yu Ming Yu Decl. ¶ 16.  In addition, Plaintiff Bing Xing Li testified that Defendant Michelle Nget was "looking" to hire "someone with a motorcycle."  Bing Xing Li Tr. 304:1-12.  When asked on cross-examination why he needed a bicycle or motor scooter, Plaintiff De Kui Xie explained "[Plaintiffs] had to make a delivery in the shortest time allowed, and that's why we have to use this bike to make the delivery." De Kui Xie Tr. 108:18-20; see also De Kui Xie Tr. 98:23-99:24; Bao Guo Xie Decl. ¶ 21; Bing Xing Li Decl. ¶ 16; Guo Jin Chen Decl. ¶ 18; Jian Le Lin Decl. ¶ 17; Jian Yun Chen Decl. ¶ 18; Lian Guan Chi Decl. ¶ 17; Shu Hui Chen Decl. ¶ 18; Xue Yong Huang Decl. ¶ 18; Yu Ming Yu Decl. ¶ 19; Yu Xing Zhou Decl. ¶ 19.

Plaintiffs made many deliveries each workday.[29]  Such extensive use put strain on their bicycles and motor scooters, which had to be repaired far more often than if they had been reserved for personal use.[30]  Plaintiffs were encouraged to make deliveries as quickly as possible, sometimes to dangerous areas, which led to occasional theft.[31]  It is for these reasons that Plaintiffs needed to buy as many bicycles as they did and to spend so much money on repairs. Already paid below the minimum wage, Plaintiffs should not be required to bear these costs.

### B. Plaintiffs Are Entitled to the Return of Money They Were Fined by Defendants for Various Alleged Infractions

Under FLSA, an employer may deduct amounts from an employee's wages for disciplinary purposes only if those deductions do not cause the employee's net wages to fall below the statutory minimum.  29 C.F.R. § 778.307.  Similarly, New York law does not permit employers to deduct amounts from an employee's wages, or to require an employee to make "any payment by separate transaction," unless those deductions or payments are (a) "made in accordance with a law or a governmental agency rule or regulation," or (b) "expressly authorized in writing by the employee and are for the benefit of the employee."  N.Y. Lab. Law

---

[29] See, e.g., Qiang Hua Li Tr. 245:18-19, Qiang Hua Li Decl. ¶ 10; Bao Guo Xie Decl. ¶ 15; Bao Jian Chen Decl. ¶ 12; De Shun Chi Decl. ¶ 11; Guo Jin Chen Decl. ¶ 12; Guo Qi Chen Decl. ¶ 10; Jian Le Lin Decl. ¶ 10; Jian Yun Chen Decl. ¶ 13; Jie Chen Decl. ¶ 9; Li Qiang Lin Decl. ¶ 15; Lian Guan Chi Decl. ¶ 11; Ming Hua Chen Decl. ¶ 10; Ming Lin Decl. ¶ 9; Mu Lei Xie Decl. ¶ 11; Qi Hua Lian Decl. ¶ 11; Rui Guan Xie Decl. ¶ 10; Shu Hua Chen Decl. ¶ 12; Shu Hui Chen Decl. ¶ 13; Shu Jian Chen Decl. ¶ 11; Wen Da Chen Decl. ¶ 12; Wen Rui Zheng Decl. ¶ 10; Wen Zhong Chen Decl. ¶ 14; Xiang Wei Chen Decl. ¶ 9; Xian Yi Chen Decl. ¶ 12; Xin Wei Lin Decl. ¶ 9; Xue Yong Huang Decl. ¶ 12; Yi Lan Lin Decl. ¶ 11; Yu Guan Ke Decl. ¶ 14; Yu Xing Zhou Decl. ¶ 13; Zhao Yu Dong Decl. ¶ 10.

[30] See, e.g., Zhi Gui Xie Tr. 64:7-8, 65:17-18; De Kui Xie Tr. 98:11-13, 21-22; Xin Wei Lin Tr. 142:4-15; Xin Wei Lin Decl. ¶¶ 14-15; Bao Guo Xie Decl. ¶¶ 19-20; Bao Jian Chen Decl. ¶ 16; Bing Xing Li Decl. ¶ 15; De Shun Chi Decl. ¶¶ 15-16; Guo Jin Chen Decl. ¶¶ 16-17; Guo Qi Chen Decl. ¶¶ 13-14; Jian Le Lin Decl. ¶¶ 15-16; Jian Yun Chen Decl. ¶¶ 16-17; Jie Chen Decl. ¶ 12; Li Qiang Lin Decl. ¶¶ 18-19; Lian Guan Chi Decl. ¶¶ 15-16; Ming Hua Chen Decl. ¶¶ 13-14; Ming Lin Decl. ¶¶ 12-13; Mu Lei Xie Decl. ¶¶ 14-15; Qi Hua Lian Decl. ¶¶ 15-16; Qiang Hua Li Decl. ¶ 14; Rui Guan Xie Decl. ¶ 14; Shu Hua Chen Decl. ¶¶ 15-16; Shu Hui Chen Decl. ¶ 16-17; Shu Jian Chen Decl. ¶ 14-15; Wen Da Chen Decl. ¶ 15-16; Wen Rui Zheng Decl. ¶ 15-16; Wen Zhong Chen Decl. ¶ 19; Xiang Wei Chen Decl. ¶ 14; Xian Yi Chen Decl. ¶¶ 12-13; Xue Yong Huang Decl. ¶¶ 16-17; Yi Lan Lin Decl. ¶ 16; Yu Guan Ke Decl. ¶ 20; Yu Ming Yu Decl. ¶¶ 17-18; Yu Xing Zhou Decl. ¶¶ 17-18; Zhao Yu Dong Decl. ¶¶ 13-14.

[31] See Ming Lin Tr. 326:13-16; Rui Guan Xie Decl. ¶ 15.

§ 193(1), (2).    Courts have held that "employers violate Section 193 when they make subtractions from an employee's compensation because of the employee's poor performance." Pachter v. Bernard Hodes Group, Inc., No. 03 Civ. 10239 (RPP), 2005 WL 2063838, at *6 (S.D.N.Y. Aug. 25, 2005); see also Burke v. Steinmann, No. 03 Civ. 1390 (GEL), 2004 WL 1117891, at *7 (S.D.N.Y. May 18, 2004) (holding that an employer may not sue his employee for lost profits caused by his substandard performance, and that an employer's "sole remedy for an employee's poor performance is termination"); Guepet v. Int'l TAO Sys., Inc., 110 Misc. 2d 940, 940-42 (Sup. Ct. Nassau County 1981) ("Nowhere does [section 193] permit an employer to make contemporaneous deductions from wages because an employee failed to perform properly.").

The evidence at trial shows that Defendants—particularly Defendant Michelle Nget—imposed fines on Plaintiffs for alleged infractions.[32]   Most commonly, Plaintiffs were fined $20 for failing to register in the restaurant's computer system that they had left to deliver an order.[33] They were also fined $50 for accidentally slamming the door upon entering or exiting the

---

[32] See, e.g., Zhi Gui Xie Tr. 47:17, 48:10, 77:6; De Kui Xie Tr. 100:2, 6-7; Xin Wei Lin Tr. 142:16, 22, Xin Wei Lin Decl. ¶¶ 16-18; Jian Yun Chen Tr. 156:13, 17-18, Jian Yun Chen Decl. ¶¶ 20-21; Yi Lan Lin Tr. 170:13, 16, Yi Lan Lin Decl. ¶ 19; Yu Xing Zhou Tr. 174:19, 23, Yu Xing Zhou Decl. ¶ 22; Rui Guan Xie Tr. 181:6, 10, Rui Guan Xie Decl. ¶ 17; Wen Da Chen Tr. 185:14, 20, Wen Da Chen Decl. ¶¶ 19, 21; Guo Qi Chen Tr. 193:25, 194:2-3, Guo Qi Chen Decl. ¶ 17; Shu Hua Chen Tr. 199:19-21, Shu Hua Chen Decl. ¶ 19; Xian Yi Chen Tr. 230:7, 9, 231:10-13, Xian Yi Chen Decl. ¶¶ 20, 22 ; Bao Jian Chen Tr. 255:5, 8, Bao Jian Chen Decl. ¶¶ 19, 21; Li Qiang Lin Tr. 265:9, 11, Li Qiang Lin Decl. ¶ 21; Shu Hui Chen Tr. 270:25, 271:8-9, Shu Hui Chen Decl. ¶ 20; Lian Guan Chi Tr. 283:5, 14-16, Lian Guan Chi Decl. ¶ 19; Guo Jin Chen Tr. 287: 23, 25, Guo Jin Chen Decl. ¶¶ 20, 22; Shu Jin Chen Tr. 291:9; Bao Guo Xie Tr. 299:19, 21, Bao Guo Xie Decl. ¶¶ 23, 25; Mu Lei Xie Tr. 309:3, 5, Mu Lei Xie Decl. ¶ 18; Yu Guan Ke Tr. 323:12, 324:1-3, Yu Guan Ke Decl. ¶ 23; Jian Le Lin Decl. ¶ 19; Jie Chen Decl. ¶ 15; Wen Zhong Chen Decl. ¶ 23; Xue Yong Huang Decl. ¶¶ 20-21; Yu Ming Yu Decl. ¶ 21.

[33] See, e.g., Zhi Gui Xie Tr. 47:18-20; 48:6-8; De Kui Xie Tr. 100: 5-7; Xian Yi Chen Tr. 230:13, 231:10-13, Xian Yi Chen Decl. ¶ 20; Lian Guan Chi Tr. 283:4-11, Lian Guan Chi Decl. ¶ 19; Bao Guo Xie Decl. ¶¶ 23-24; Bao Jian Chen Decl. ¶¶ 19-20; Guo Jin Chen Decl. ¶ 21; Guo Qi Chen Decl. ¶ 17; Jian Le Lin Decl. ¶ 19; Jian Yun Chen Decl. ¶¶ 20-21; Jie Chen Decl. ¶ 15; Li Qiang Lin Decl. ¶ 21; Lian Guan Chi Decl. ¶ 19; Mu Lei Xi Decl. ¶ 18; Rui Guan Xie Decl. ¶ 17; Shu Hua Chen Decl. ¶ 19; Shu Hui Chen Decl. ¶ 20; Wen Da Chen Decl. ¶19-20; Wen Zhong Chen Decl. ¶ 23; Xian Yi Chen Decl. ¶¶ 20-21; Xin Wei Lin Decl. ¶¶ 16-17; Xue Yong Huang Decl. ¶¶ 20-21; Yi Lan Lin Decl. ¶ 19; Yu Guan Ke Decl. ¶ 23; Yu Ming Yu Decl. ¶ 21; Yu Xing Zhou Decl. ¶¶ 21-22.

restaurant;[34] $200—more than two weeks' wages for a part-time worker—in some instances where a customer called to complain about a late order;[35] and $30 for failing to ensure that a customer signed a credit card receipt.[36] These fines are <u>per se</u> illegal under New York Labor Law and, since Plaintiffs were already paid less than the minimum wage, also illegal under FLSA. Accordingly, Plaintiffs are entitled to the return of all fines paid to Defendants.

### C. Plaintiffs Are Entitled to the Return of Money They Paid Defendants When Unable to Complete Their "Sidework"

FLSA's requirement that wages be paid "free and clear" means that any money an employee "'kicks back' directly or indirectly to the employer or another person for the employer's benefit" must be excluded from calculation of the employee's wages. 29 C.F.R. § 531.35. New York law allows deductions from employees' wages, including separate payments from the employee to the employer, only under limited circumstances, pursuant to the strict guidelines set forth in New York Labor Law § 193. <u>See</u> <u>Angello v. Labor Ready, Inc.</u>, 7 N.Y.3d 579, 585-86 (2006).

The evidence at trial has shown that Defendants—for their own benefit, not that of their employees—collected cash payments from Plaintiffs in violation of FLSA and New York Labor Law in instances where Plaintiffs were unable to complete their non-delivery work. Defendants required Plaintiffs to perform various tasks at the restaurant, known as "sidework."[37] Among other tasks, most Plaintiffs were required to "do the sauces," meaning that they had to fill small

---

[34] <u>See, e.g.</u>, Xian Yi Chen Tr. 230:13-20, Xian Yi Chen Decl. ¶¶ 20-21; Bao Guo Xie Decl. ¶ 23; Wen Da Chen Decl. ¶ 19.

[35] <u>See, e.g.</u>, Zhi Gui Xie Tr. 48:15-25; Bao Guo Xie Decl. ¶ 23; Jian Yun Chen Decl. ¶¶ 20-21; Wen Da Chen Decl. ¶ 19; Xian Yi Chen Decl. ¶ 20.

[36] <u>See, e.g.</u>, Jie Chen Decl. ¶ 15.

[37] <u>See, e.g.</u>, Zhi Gui Xie Tr. 38:10-17, 23-25; 39:25, 40:1-6, 41:15-25; De Kui Xie Tr. 90:24-25, 91:1-5.

25

plastic containers with different types of sauce or prepare packets of utensils and napkins for inclusion in delivery orders.[38] Defendants assigned each Plaintiff a certain quota of "the sauces" to do in a given week or month.[39] Depending on their skill and hours of employment, some Plaintiffs found time during the workday to accomplish these tasks, while others arrived before or stayed after their delivery shifts on an unpaid basis to meet their quotas.[40] The evidence has shown, however, that some Plaintiffs satisfied their sidework obligations by paying Defendant Michelle Nget a weekly kickback of $10 to $30—the amount varying with the amount of sidework to be avoided—to have one of the restaurant's Hispanic employees, known around the restaurant as "amigos," do the work in their place.[41] These illegal kickbacks depressed Plaintiffs' wages even further below the minimum wage, so Plaintiffs are entitled to the return of any sums kicked back to Defendants for this purpose.

## IV.  DEFENDANTS ARE NOT ENTITLED TO A MEAL ALLOWANCE

FLSA allows an employer to pay a portion of an employee's minimum wage in the form of a non-cash benefit, such as meals.  See 29 U.S.C. § 203(m).  This allowance is limited to the meals' "reasonable cost," which has been interpreted to be "not more than the actual cost to the employer," 29 C.F.R. § 531.3(a) (emphasis added), and may not include a profit, see 29 C.F.R.

---

[38] See, e.g., Bao Jian Chen Decl. ¶ 13; Bing Xing Li Decl. ¶ 12; De Shun Chi Decl. ¶ 12; Guo Jin Chen Decl. ¶ 13; Guo Qi Chen Decl. ¶ 11; Jian Le Lin Decl. ¶ 11-12; Jian Yun Chen Decl. ¶ 14; Li Qiang Lin Decl. ¶ 16; Lian Guan Chi Decl. ¶ 12; Ming Hua Chen Decl. ¶ 11; Ming Lin Decl. ¶ 10; Mu Lei Xie Decl. ¶ 12; Qi Hua Lian Decl. ¶ 12; Qiang Hua Li Decl. ¶ 11; Rui Guan Xie Decl. ¶ 11; Shu Hua Chen Decl. ¶ 13; Shu Hui Chen Decl. ¶ 14; Shu Jian Chen Decl. ¶ 12; Wen Da Chen Decl. ¶ 13; Wen Rui Zheng Decl. ¶ 11; Wen Zhong Chen Decl. ¶ 15; Xiang Wei Chen Decl. ¶ 10; Xian Yi Chen Decl. ¶ 13; Xin Wei Lin Decl. ¶ 10; Xue Yong Huang Decl. ¶ 13; Yi Lan Lin Decl. ¶ 12; Yu Guan Ke Decl. ¶ 15; Yu Ming Yu Decl. ¶ 14; Yu Xing Zhou Decl. ¶ 14; Zhao Yu Dong ¶ 11.

[39] See, e.g., Zhi Gui Xie Tr. 50:2-12; Bing Xing Li Decl. ¶ 12; Qiang Hua Li Decl. ¶ 11; Yu Ming Yu Decl. ¶ 14.

[40] See, e.g., Wen Da Chen Decl. ¶ 13; Yu Guan Ke Decl. ¶ 16; Yu Ming Yu Decl. ¶ 14.

[41] See, e.g., Bao Guo Xie Decl. ¶ 16; Bing Xing Li Decl. ¶ 12; Qiang Hua Li Decl. ¶ 12; Xian Yi Chen Decl. ¶ 14; Yu Guan Ke Decl. ¶ 16.

§ 531.3(b).  An employer, if claiming such a credit, must preserve records to substantiate the associated costs.  29 C.F.R. § 516.27(a).  Similarly, New York law requires employers to furnish employees with a statement each pay period setting forth the wages and allowances claimed, including the meal allowance.  N.Y. Comp. Codes R. & Regs., tit. 12, § 137-2.2.  New York law also caps the amount of the allowance employers can claim for meals provided to employees. See N.Y. Comp. Codes R. & Regs., tit. 12, § 137-1.9.

Courts that have endeavored to determine a meal allowance have set a high bar, placing the burden with the employer to prove that the claimed allowance represents the reasonable cost of meals furnished.  Herman v. Collis Foods, Inc., 176 F.3d 912, 920 (6th Cir. 1999) (affirming meal allowance where defendant kept contemporaneous records and offered expert report and "records of the cost of food that it purchased, along with records of its other operating costs"). "'An employer's unsubstantiated estimate of his cost, where the employer has failed to comply with the record-keeping provisions of the FLSA,' does not satisfy this burden of proof."  Id. (quoting Donovan v. New Floridian Hotel, Inc., 676 F.2d 468, 475 (11th Cir. 1982)); see also Morgan v. SpeakEasy, LLC, No. 05 C 5795, 2007 WL 2757170, at *20 (N.D. Ill. Sept. 20, 2007) (rejecting claimed meal allowance where defendant failed to produce documentary support); Dole v. Bishop, 740 F. Supp. 1221, 1227 (S.D. Miss. 1990) (holding that without records of meal credits, an employer that arbitrarily set costs of employee meals at half their retail price could not take meal allowance).

In this case, Defendants provided Plaintiffs with food, though numerous Plaintiffs have testified that there was never enough food for all of the workers during the evening hours and that, therefore, many Plaintiffs went without food or were forced to purchase food—even from

Saigon Grill—with their own funds.[42]  Moreover, Defendants have never prior to the filing of

this lawsuit indicated an intention to take a meal allowance, given employees notice thereof, or

kept records to substantiate the cost of providing meals.  Defendants have also not produced any

documents demonstrating the cost of providing employees with meals that could be meaningfully

analyzed and tested by Plaintiffs or assessed by the Court.  Indeed, though the law requires more,

Defendants failed to give testimony upon which the Court could attempt to estimate the cost of

meals.  Under such circumstances, there is absolutely no authority in support of Defendants'

position that they are entitled to a meal allowance under FLSA.[43]

## V.  MANY PLAINTIFFS ARE ENTITLED TO COMPENSATION BECAUSE DEFENDANTS FIRED THEM IN RETALIATION FOR UNDERTAKING TO FILE THIS LAWSUIT

### A.  The Evidence Shows That Defendants Retaliated Against Plaintiffs

Under FLSA, an employer may not "discharge or in any other manner discriminate

against any worker because that worker has filed a complaint or instituted or caused to be

instituted any proceeding under or related to this act or has testified or is about to testify in any

such proceeding."  29 U.S.C. § 215(a)(3).  If an employer violates FLSA's anti-retaliation

provision, the plaintiff may recover "such legal or equitable relief as may be appropriate . . .

including without limitation employment, reinstatement, promotion, and the payment of wages

---

[42] See, e.g., Zhi Gui Xie Tr. 44:2-5; De Kui Xie Tr. 92:20-25; 93:1-3, 9-18; Xin Wei Lin Tr. 136:6-18, Xin Wei Lin Decl. ¶ 11; Rui Guan Xie Tr. 179:14-18, 180:2-9, Rui Guan Xie Decl. ¶ 12; Bao Guo Xie Decl. ¶ 17; Bao Jian Chen Decl. ¶ 14; Bing Xing Li Decl. ¶ 13; De Shun Chi Decl. ¶ 14; Guo Jin Chen Decl. ¶ 14; Guo Qi Chen Decl. ¶ 12; Jian Le Lin Decl. ¶ 14; Jian Yun Chen Decl. ¶ 15; Jie Chen Decl. ¶ 11; Li Qiang Lin Decl. ¶ 17; Lian Guan Chi Decl. ¶ 14; Ming Hua Chen Decl. ¶ 12; Ming Lin Decl. ¶ 11; Mu Lei Xie Decl. ¶ 13; Qi Hua Lian Decl. ¶ 13; Qiang Hua Li Decl. ¶ 12; Shu Hua Chen Decl. ¶ 14; Shu Hui Chen Decl. ¶ 15; Shu Jian Chen Decl. ¶ 13; Wen Da Chen Decl. ¶ 14; Wen Rui Zheng Decl. ¶ 13; Wen Zhong Chen Decl. ¶ 16; Xiang Wei Chen Decl. ¶ 12; Xian Yi Chen Decl. ¶ 15; Xue Yong Huang Decl. ¶ 14; Yi Lan Lin Decl. ¶ 14; Yu Guan Ke Decl. ¶ 18; Yu Ming Yu Decl. ¶ 15; Yu Xing Zhou Decl. ¶ 15; Zhao Yu Dong Decl. ¶ 12.

[43] In any event, a meal credit cannot exceed the maximums imposed under New York Labor Law.  See N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.9(a)(1).

lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Punitive damages are also available. See Sines v. Service Corp. Int'l, No. 03 Civ. 5465 (SC), 2006 WL 3247663, at *1-4 (S.D.N.Y. Nov. 8, 2006) (affirming jury's award of $130,000 in punitive damages on top of award of approximately $65,000 in back pay and liquidated damages); see also Travis v. Gary Cmty. Mental Health Ctr., Inc., 921 F.2d 108, 111 (7th Cir. 1990) (stating that compensatory, punitive, and emotional distress damages are available).

Courts evaluate retaliation claims brought under FLSA using the analytical framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Mullins v. City of New York, No. 04 Civ. 2979 (SAS), 2008 WL 1754128, at *4 (S.D.N.Y. Apr. 10, 2008) (applying this framework in the FLSA context); Lai v. Eastpoint Int'l, Inc., No. 99 Civ. 2095 (DLC), 2000 WL 1234595, at *3-4 (S.D.N.Y. Aug. 31, 2000) (same). In order to establish a prima facie case of retaliation, a plaintiff must demonstrate "participation in protected activity known to the defendant, an employment action disadvantaging the person engaged in the protected activity, and a causal connection between the protected activity and the adverse employment action." Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000).

Most Plaintiffs have established a prima facie case of retaliation.[44] On March 2, 2007, after learning that Plaintiffs had been preparing to file a lawsuit under FLSA, Defendants Simon and Michelle Nget called a meeting of all of the delivery workers at the Amsterdam location. At this meeting, Defendants told Plaintiffs to sign a document, which they believed would have absolved Defendants of all liability for the violations complained of in this case, or to not return

---

[44] Not all of the Plaintiffs are asserting claims for retaliation in this action. See Amended Joint Pretrial Order at 7.

to work the next day.[45]  None of the workers signed the document, and they (and later, the delivery workers at the University Place location, some of whom were also asked to waive their right to sue) were summarily discharged.

In Brock v. Casey Truck Sales, Inc., 839 F.2d 872 (2d Cir. 1988), the Second Circuit upheld a FLSA retaliation claim based on substantially similar facts to the case at bar.  In that case, the defendants' employees worked unlimited overtime hours at straight-time pay.  Id. at 874.  Following an unfavorable Department of Labor investigation, the employer reluctantly agreed to pay his current and former employees back wages.  Soon after, however, he convened a meeting of his employees and demanded that they sign a "loyalty oath" repudiating their claims to back wages.  Id.  As in the instant case, those who refused to sign were terminated.  Id.  In upholding the plaintiffs' retaliation claim, the court reasoned that "[p]rotection against discrimination for instituting FLSA proceedings would be worthless if an employee could be fired for declining to give up the benefits he is due under the Act."  Id. at 879.

By contrast, in Lambert v. Genesee Hospital, 10 F.3d 46 (2d Cir. 1993), the Second Circuit held that "[t]he plain language of [the FLSA] limits the cause of action to retaliation for filing formal complaints, instituting a proceeding, or testifying, but does not encompass complaints made to a supervisor."  Id. at 55.  The plaintiffs in Lambert, unlike those here, made several informal wage-related complaints to their supervisors and were subsequently fired.  The court rejected their retaliation claim because the "acts for which the Hospital allegedly retaliated

_____

[45] See, e.g., Zhi Gui Xie Tr. 66:3-67:15; Yu Guan Ke Decl. ¶¶ 27-30; Jian Yun Chen Tr. 157:19-159:11; Jian Yun Chen Decl. ¶¶ 27-29; Xian Yi Chen Tr. 232:19-233:13; Qiang Hua Li Tr. 247:20-248:20; Qiang Hua Li Decl. ¶¶ 20-22; Bao Jian Chen Tr. 260:5-22; Bao Jian Chen Decl. ¶¶ 26-28; Bao Guo Xie Decl. ¶¶ 28-30; Bing Xing Li Decl. ¶¶ 20-22; Guo Jin Chen Decl. ¶¶ 24-26; Jian Le Lin Decl. ¶¶ 23-25; Li Qiang Lin Decl. ¶¶ 26-28; Lian Guan Chi Decl. ¶¶ 23-25; Ming Hua Chen Decl. ¶¶ 20-22; Mu Lei Xie Decl. ¶¶ 23-25; Shu Hui Chen Decl. ¶¶ 26-28; Wen Zhong Chen Decl. ¶¶ 29-31; Xian Yi Chen Decl. ¶¶ 27-29; Yi Lan Lin Decl. ¶¶ 24-26; Yu Ming Yu Decl. ¶¶27-29; Yu Xing Zhou Decl. ¶¶ 28-30.

were neither the filing of a claim nor acts . . . that grew out of the filing of claims." Id. at 55-56. The court, in distinguishing Casey Truck Sales, emphasized that the plaintiffs did nothing more to vindicate their FLSA rights than make a few "oral complaints to a supervisor that an employee was being paid less than the complainants thought she should have been." Id. at 56.

Casey Truck Sales, and not Lambert, should control the disposition of this case because Plaintiffs did much more than merely complain informally to their supervisors; they were in the process of instituting a proceeding under FLSA at the time of their termination and, therefore, are protected by its anti-retaliation provision. Indeed, Plaintiffs were fired precisely because they would not sign away their rights under FLSA. As the Second Circuit has instructed, a court should "not hesitate[] to apply the protection of [29 U.S.C. § 215(a)(3)] where," as here, the "retaliatory conduct has a . . . chilling effect on employees' assertion of rights." Casey Truck Sales, 839 F.2d at 879. Allowing Lambert to control the disposition in a case such as this would undermine FLSA by permitting employers to terminate employees with impunity upon learning of their intention to file suit—perhaps even as an employee is standing in line at the courthouse door waiting to file his claim.

There is no question that Defendants have failed to advance a legitimate non-retaliatory reason for summarily firing Plaintiffs. Defendants offered absolutely no evidence on this issue at trial and may not rely on defense counsel's arguments alone. See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 n.9 (1981) (defendant may meet its McDonnell Douglas burden by offering "admissible evidence," and not the "argument of counsel"). The insufficiency of defense counsel's argument that the Saigon Grill eliminated its delivery service for financial reasons is accentuated by the restaurant's refusal to provide Plaintiffs with information related to

31

its finances.[46]  Accordingly, the Court should find that Plaintiffs are entitled to relief on their

retaliation claims under FLSA.

Additionally, Plaintiffs have a claim for retaliation under New York law, which covers a

broader range of protected activities than FLSA.  New York Labor Law makes it illegal to

> discharge, penalize, or in any other manner discriminate against
> any employee because such employee has made a complaint to his
> employer, or to the commissioner or his authorized representative,
> that the employer has violated any provision of this chapter, or
> because such employee has caused to be instituted a proceeding
> under or related to this chapter, or because such employee has
> testified or is about to testify in an investigation or proceeding
> under this chapter.

N.Y. Lab. Law § 215(1).   By its terms, New York Labor Law protects employees from

retaliation not only when they institute formal proceedings or are in the process of doing so, as

under FLSA, but also when they merely complain to their employers about labor law violations.

### B. Damages Are Available for All Workers Who Were Retaliated Against, Without Regard to Immigration Status

#### 1. *Backpay Is Available to Undocumented Workers in Suits Against "Knowing Employers"*

In Hoffman Plastic Compounds, Inc. v. NLRB, 535 U.S. 137 (2002), the Supreme Court

held that the NLRB could not award backpay for retaliation to an undocumented worker, since

doing so would contravene the policies underlying the Immigration Reform and Control Act of

1986, 8 U.S.C. § 1324 et seq. ("IRCA").  Hoffman Plastic, 535 U.S. at 149, 151.  The plaintiff in

Hoffman Plastic had violated an express provision of IRCA by presenting his employer with the

birth certificate of another individual in order to fraudulently gain employment, and the employer

did not learn of the plaintiff's immigration status until three years after the retaliatory discharge.

---

[46] Defendants provided testimony regarding only the restaurants' overall revenue.  Trial Tr. 503:23-504:12.

Id. at 140.  In addressing the appropriateness of an award of backpay, the Supreme Court concluded that "allowing the Board to award backpay to illegal aliens would unduly trench upon explicit statutory prohibitions critical to federal immigration policy, as expressed in IRCA.  It would encourage the successful evasion of apprehension by immigration authorities, condone prior violations of the immigration laws, and encourage future violations."  Id. at 151.

IRCA seeks to deter the employment of undocumented workers (and, in turn, illegal immigration) by: (i) mandating that employers verify the immigration status of their employees; (ii) mandating that employers hire and employ only individuals who are authorized to work in the United States; and (iii) criminalizing the act of presenting false documents to an employer. See id. at 147-48.    Significantly, IRCA does not attempt to deter the employment of undocumented workers by making it unlawful for them to obtain employment in the United States.  See Affordable Hous. Found., Inc. v. Silva, 469 F.3d 219, 231 (2d Cir. 2006).  "Congress concluded that 'the most humane, credible and effective way to respond' to the problem was to penalize those employers who hired illegal aliens."  Id. at 231 (quoting H.R. Rep. No. 99-682(1), at 46 (1986), as reprinted in 1986 U.S.C.C.A.N. 5649, 5650).  The legislative history makes Congress's approach clear:  "Employers will be deterred by the penalties in this legislation from hiring unauthorized aliens and this, in turn, will deter aliens from entering illegally or violating their status in search of employment."  H.R. Rep. No. 99-682(1), at 46.

Application of the holding of Hoffman Plastic to a case like the one at bar, where the employer has knowingly hired an undocumented worker who did not offer fraudulent documentation, would: (i) reward the only party that has violated IRCA's provisions; and (ii)

undermine the policy of IRCA (i.e., to deter employers from hiring undocumented workers).[47]  In his dissent in Hoffman Plastic, Justice Breyer noted that the Court was not faced with the circumstance of a "knowing employer."  See id. at 155-56.  More recently, the Second Circuit, in holding that IRCA does not preclude an award of lost earnings to an undocumented worker under New York Labor Law § 240(1), opined that the case a "knowing employer" is factually distinguishable from Hoffman Plastic, as it "simply do[es] not present the same concern for subversion of federal immigration law."  Affordable Hous. Found., 469 F.3d at 236-37; see also Balbuena v. IDR Realty LLC, 6 N.Y.3d 338, 360 (2006) ("Hoffman is dependent on its facts, including the critical point that the alien tendered false documentation that allowed him to work legally in this country.").  In the context of NLRB proceedings, several Administrative Law Judges have held that an undocumented worker may recover backpay against a "knowing employer."  See Handyfat Trading, Inc., N.L.R.B. No. 29-CA-28181, 2007 WL 2371977 (Aug. 14, 2007); Mezonos Maven Bakery, Inc., N.L.R.B. No. 29-CA-25476, 2006 WL 3196754 (Nov. 1, 2006).[48]

---

[47] As the Ninth Circuit explained, "many employers turn a blind eye to immigration status during the hiring process; their aim is to assemble a workforce that is both cheap to employ and that minimizes their risk of being reported for violations of statutory rights. Therefore, employers have a perverse incentive to ignore immigration laws at the time of hiring but insist upon their enforcement when their employees complain." Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004). These "knowing employers" will have an even greater incentive to hire undocumented workers if, because of the unavailability of backpay, undocumented workers are less likely to report labor law violations and to collect significant damage awards. Justice Breyer's dissent in Hoffman Plastic accordingly notes that the failure to award backpay against a knowing employer—a circumstance not at issue there, but which is at issue here—would result in a "perverse economic incentive, which runs directly contrary to the immigration statute's basic objective." Hoffman Plastic, 535 U.S. at 155-56. Significantly, no member of the five-Justice majority in Hoffman Plastic disavowed Justice Breyer's statement.

[48] Other courts have come to a contrary conclusion on this issue. See., e.g., Renteria v. Italia Foods, Inc., No. 02 C 495, 2003 WL 21995190, at *6 (N.D. Ill. Aug. 21, 2003); Singh v. Jutla & C.D. & R Oil, Inc., 214 F. Supp. 2d 1056, 1061 (N.D. Cal. 2002). These courts conclude that the reasoning of Hoffman Plastic applies with equal force, reasoning that because federal law prohibits employing undocumented workers, a court cannot issue an award that essentially amounts to a judicial declaration that the worker's employment should have continued. Renteria, 2003 WL 21995190, at *6.

In this case, Defendants were very clearly "knowing employers." They made no effort to comply with IRCA by obtaining I-9 forms or identification from Plaintiffs,[49] who they knew were from China and spoke no English. Despite the illegality of such arrangements, it is common knowledge that many restaurants in New York draw from a pool of undocumented workers—who are unskilled, unsophisticated, and often desperate—to perform tasks, like delivery, for wages that are less than what the law requires. Since the evidence shows that Plaintiffs have not violated IRCA and that Defendants knowingly flouted their obligations under both immigration and labor law, Plaintiffs urge the Court to award backpay to all those Plaintiffs against whom Defendants retaliated, regardless of their immigration status.

2. *Compensatory and Punitive Damages Are Available, Regardless of Plaintiffs' Immigration Status*

In any event, courts have held that the Supreme Court's decision in Hoffman Plastic does not preclude an award of compensatory or punitive damages to an undocumented worker who has been retaliated against. See Renteria v. Italia Foods, Inc., No. 02 C 495, 2003 WL 21995190, at *5 (N.D. Ill. Aug. 21, 2003); Singh v. Jutla & C.D. & R. Oil, Inc., 214 F. Supp. 2d 1056, 1061 (N.D. Cal. 2002). Indeed, the court in Singh, though finding backpay to be unavailable, concluded that compensatory and punitive damages could be used, in essence as surrogates, to address the policy issues discussed in the preceding section. See Singh, 214 F. Supp. 2d at 1061.

---

[49] See, e.g., Zhi Gui Xie Tr. 26:9-14; Bao Guo Xie Decl. ¶ 38; Guo Jin Chen Decl. ¶ 34; Guo Qi Chen Decl. ¶ 28; Jian Le Lin Decl. ¶ 32; Jian Yun Chen Decl. ¶ 38; Jie Chen Decl. ¶ 26; Li Qiang Lin Decl. ¶ 38; Lian Guan Chi Decl. ¶ 31; Ming Lin Decl. ¶ 24; Mu Lei Xie Decl. ¶ 34; Rui Guan Xie Decl. ¶ 27; Shu Hua Chen Decl. ¶ 32; Shu Hui Chen Decl. ¶ 37; Shu Jian Chen Decl. ¶ 27; Wen Da Chen Decl. ¶ 31; Wen Zhong Chen Decl. ¶ 40; Xin Wei Lin Decl. ¶ 30; Xue Yong Huang Decl. ¶ 32; Yu Guan Ke Decl. ¶ 38; Yu Xing Zhou Decl. ¶ 40; Zhao Yu Dong Decl. ¶ 24.

        3.   *If Necessary, Plaintiffs Will Produce Additional Information in the Damages Phase of Trial*

If the Court should determine that information regarding Plaintiffs' immigration status is relevant to an award of damages for their retaliation claims, Plaintiffs will promptly submit this information to the Court through a stipulation or offer of proof.

## VI.  EACH INDIVIDUAL DEFENDANT IS AN EMPLOYER LIABLE FOR PLAINTIFFS' UNPAID WAGES

FLSA and New York Labor Law both impose personal liability on employers for wage and hour violations.  See Ansoumana v. Gristede's Operating Corp., 255 F. Supp. 2d 184, 192 (S.D.N.Y. 2003).  Under FLSA, the definition of an "employer" who may be held personally liable includes "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  This definition of "employer" is to be broadly construed. See RSR Sec. Servs., 172 F.3d at 139 ("The Supreme Court has emphasized the 'expansiveness' of the FLSA's definition of employer . . . .  Above and beyond the plain language . . . the remedial nature of the statute further warrants an expansive interpretation of its provisions so that they will have 'the widest possible impact' in the national economy.").[50]  Thus, FLSA permits more than one person to be held liable as an employer, see Falk v. Brennan, 414 U.S. 190, 195 (1973), and it does not matter that an individual "may have shared or delegated operational control to other[s] . . . or exercised that control infrequently," Moon, 248 F. Supp. 2d at 237.

The Second Circuit employs an "economic reality" test to determine whether a defendant is an employer for FLSA purposes.  RSR Sec. Servs., 172 F.3d at 139.  The court examines whether the defendant has the power to hire and fire the employees, supervises or controls

---

[50] New York law takes a similarly broad approach to personal liability.  Jiao v. Chen, No. 03 Civ. 0165 (DF), 2007 WL 4944767, at *9 n.12 (S.D.N.Y. Mar. 30, 2007) ("[C]ourts have interpreted the definition of 'employer' under New York Labor Law coextensively with the definition used by the FLSA.").

employee work schedules or conditions of employment, determines the rate and method of payment, or maintains employment records.  Id.  This list is neither exclusive nor exhaustive, as a defendant need not satisfy any particular factor or all the above factors to qualify as an employer; no one factor is dispositive, and any other relevant factor may also be considered.  See Zheng v. Liberty Apparel Co., 355 F.3d 61, 71 (2d Cir. 2003).  The Second Circuit has also warned that a "mechanical application of the test is to be avoided."  Brock v. Superior Care, Inc., 840 F.2d 1054, 1059 (2d Cir. 1988); see also Zheng, 355 F.3d at 69 ("[T]he District Court erred when, based exclusively on the four factors . . . it determined that the Liberty Defendants were not, as a matter of law, joint employers under the FLSA.") (emphasis in original).

The unique family dynamic in this case is another factor that the Court may consider when determining the economic realities.  See Lopez v. Silverman, 14 F. Supp. 2d 405, 420 (S.D.N.Y. 1998) (considering, under the economic realities test, the family ties of garment companies which "functioned [] as an integrated economic unit").  In the case of another "family business," Chao v. Vidtape, Inc., 196 F. Supp. 2d 281 (E.D.N.Y. 2002), the court found that one family member was an employer, without affirmatively concluding that he had the power to control wages, because

> [he] gave [employees] work assignments and supervisory directions.  [He] hired some of the Vidtape employees.  Employees reported to [him] in the absence of [his brother].  [He] directed some employees to report to work on Sundays and he directed employees not to report to work after the Department of Labor commenced its investigation.

Id. at 285.

Defendants have conceded that Simon Nget, the principal owner of Saigon Grill, set the terms and conditions of Plaintiffs' employment and therefore is an "employer" subject to

individual liability.[51]  Simon Nget claims that the Saigon Grill was, in essence, a one-man operation; that he hired and supervised all of the Saigon Grill's approximately 140 employees at multiple locations;[52] and that his wife, who has worked at the Saigon Grill for its entire existence, only helped the packers and inspected food quality, but never so much as spoke to a delivery person to give him instructions.[53]  This account of events—an obvious attempt to have one member of a family-run and -owned enterprise take sole responsibility for the Saigon Grill's labor law violations—is implausible.  As Plaintiffs' testimony demonstrates, Simon Nget depended heavily on his family and trusted associates—namely his wife, Michelle Nget; his sister, Leana Nget; and his longtime friend Sung Truong, a.k.a. Tony—to manage the day-to-day operations (including delivery service) at the Saigon Grill restaurants.

The evidence has shown that Defendant Michelle Nget—the "boss lady," as Plaintiffs typically refer to her—exercised extensive control over the working conditions of delivery workers at multiple Saigon Grill locations.  She hired many of the Plaintiffs in this action[54] and had full authority to terminate delivery workers.[55]  Indeed, Michelle Nget fired Plaintiffs Guo Qi Chen and Shu Jian Chen, who were the subject of customer complaints about late deliveries;[56]

---

[51] See Amended Joint Pretrial Order, Stipulations of Law ¶ 1.

[52] Simon Nget Tr. 403:15-19.

[53] Simon Nget Tr. 346:10-21; 355:3-25.

[54] See, e.g., Zhi Gui Xie Tr. 25:9-11, 19-21; Qi Hua Lian Tr. 122:8-10; Jian Yun Chen Tr. 155:13-22; Yi Lan Lin Tr. 167:1-2; Guo Qi Chen Tr. 192:25-196:4, 195:1-4; Wen Zhong Chen Tr. 211:14-17; Qiang Hua Li Tr. 246:5-22; Bing Xing Li Tr. 303:23-304:10; Ming Hua Chen Tr. 318:22-319:7; Mu Lei Xie; 307:10-14; Yu Guan Ke Tr. 321:10-20; Guo Jin Chen Decl. ¶ 23; Wen Da Chen Decl. ¶ 23; Bao Guo Xie Decl. ¶¶ 26-27; Bao Jian Chen Decl. ¶ 22; Jian Le Lin Decl. ¶ 20; Lian Guan Chi Decl. ¶ 21; Ming Hua Chen Decl. ¶ 17; Mu Lei Xie Decl. ¶ 20; Shu Hui Chen Decl. ¶ 22; Xue Yong Huang Decl. ¶ 23; Yu Ming Yu Decl. ¶ 23; Yu Xing Zhou Decl. ¶ 24.

[55] See, e.g., Qi Hua Lian Tr. 122:8-14; Xin Wei Lin Tr. 135:24; Guo Qi Chen Tr. 192:12-18; De Shun Chi Tr. 275:20-25; Bao Guo Xie Tr. 299:5-9; Ming Lin Tr. 328:2-14; Qi Hua Lian Decl. ¶ 22; Shu Jian Chen Decl. ¶ 19.

[56] See, e.g., Guo Qi Chen Tr. 192:12-18; Shu Jian Chen Decl. ¶ 19.

38

Plaintiff Xin Wei Lin, who refused to make a delivery before finishing his dinner;[57] and Plaintiff Ming Lin, who refused to make a delivery to a dangerous building.[58]

Plaintiffs who worked at the Amsterdam location uniformly testified that Michelle Nget was responsible for supervising them and assigning them non-delivery "sidework" during evening hours.[59] The evidence demonstrates that Michelle Nget set Plaintiffs' work schedule and approved all changes to it.[60] She posted a written copy of the schedule on the wall at the Amsterdam location[61] and monitored Plaintiffs' attendance.[62] Michelle also oversaw pay-related issues for the delivery workers. She told the delivery workers how much they would earn[63] and distributed salaries twice monthly in cash-filled envelopes.[64] In addition to these traditional

---

[57] Xin Wei Lin Tr. 136:25-137:9.

[58] Ming Lin Tr. 328:2-14.

[59] See, e.g., Zhi Gui Xie Tr. 32:13-17, 45:22-46:2, 52:15-18; 58:7-9; 79:23-80:9; Wen Zhong Chen 211:18-25; Bao Jian Chen Tr. 255:17-20, 257:1-12; Yu Ming Yu Tr. 312:22-313:3; Bao Guo Xie Decl. ¶ 27; Jian Yun Chen Decl. ¶ 25; Lian Guan Chi Decl. ¶ 21;  Ming Hua Chen Decl. ¶ 19; Qiang Hua Li Decl. ¶ 19; Shu Hui Chen Decl. ¶ 24; Shu Jian Chen Decl. ¶ 19; Wen Da Chen Decl. ¶ 23; Xian Yi Chen Decl. ¶ 25; Wen Da Chen Tr. 189:13-16. Guo Qi Chen Tr. 192:5-9; Qiang Hua Li Tr. 245:12-15; 246:20-24; Bao Jian Chen Tr. 257:14-17; Guo Jin Chen Tr. 287:11-13; Bing Xing Li Tr. 302:5-20; Yu Guan Ke Tr. 321:21-322:3; Bao Jian Chen Decl. ¶¶ 22, 24; Guo Jin Chen Decl. ¶ 23; Li Qiang Lin Decl. ¶ 24; Mu Lei Xie Decl. ¶ 20; Qi Hua Lian Decl. ¶ 19; Xue Yong Huang Decl. ¶ 25; Yi Lan Lin Decl. ¶ 21; Yu Ming Yu Decl. ¶ 25; Yu Xing Zhou Decl. ¶ 26.

[60] See, e.g., Zhi Gui Xie Tr. 58:10-12; Jian Yun Chen Tr. 149:22-150:10; Shu Jian Chen Tr. 163:22-5; Yi Lan Lin Tr. 167:14-24; Qiang Hua Li Tr. 247:2-10; Wen Zhong Chen Tr. 211:18-25; Bing Xing Li Tr. 304:18-21; Mu Lei Xie Tr. 307:10-14, 307:20-308:2; Bao Guo Xie Decl. ¶ 27; Li Qiang Lin Decl. ¶ 24; Ming Hua Chen Decl. ¶ 19; Wen Da Chen Decl. ¶ 22; Xian Yi Chen Dec. ¶ 25; Xin Wei Lin Decl. ¶ 21; Xue Yong Huang Decl. ¶ 25; Yu Guan Ke Decl. ¶ 26; Yu Ming Yu Decl. ¶ 25; Yu Xing Zhou Decl. ¶ 26.

[61] Pls.' Ex. 2; Zhi Gui Xie Tr. 32:18-24, 75:24-76:12, 59:4-6.

[62] Yu Xing Zhou Tr. 176:2-18.

[63] See, e.g., Wen Zhong Chen Tr. 206:11-13; Qiang Hua Li Tr. 250:10-17; Bao Guo Xie Decl. ¶ 26; Bing Xing Li Decl. ¶ 18; Guo Jin Chen Decl. ¶ 23; Guo Qi Chen Decl. ¶ 20; Jian Le Lin Decl. ¶ 20; Jian Yun Chen Decl. ¶ 23; Ming Hua Chen Decl. ¶ 19; Qi Hua Lian Decl. ¶ 19; Shu Hui Chen Decl. ¶ 22; Shu Jian Chen ¶ 19; Wen Da Chen Decl. ¶ 22; Xian Yi Chen Decl. ¶ 25; Xue Yong Huang Decl. ¶ 25; Yi Lan Lin Decl. ¶ 21; Yu Ming Yu Decl. ¶ 23; Yu Xing Zhou Decl. ¶ 24.

[64] See, e.g., Zhi Gui Xie Tr. 56:17-22, 58:13-19, 80:10-81:3; Bao Jian Chen Tr. 253:11-19; Guo Jin Chen Decl. ¶ 11; Jian Le Lin Decl. ¶ 8; Jian Yun Chen Decl. ¶ 11; Lian Guan Chi Decl. ¶ 10; Ming Lin Decl. ¶ 17; Qi Hua Lian Decl. ¶ 10; Qiang Hua Li Decl. ¶ 9; Shu Hua Chen Decl. ¶ 11; Shu Jian Chen Decl. ¶ 10; Wen Zhong Chen (…continued)

payroll tasks, Michelle Nget gave checks to certain Plaintiffs, ostensibly for tax purposes, and required them to return the proceeds to her.[65]  She also imposed fines on the Plaintiffs for specific infractions.[66]  Finally, an additional factor that weighs in favor of finding Michelle Nget personally liable relates to her financial interest in the Saigon Grill and its manner of operation, as evidenced by her relationship to Defendant Simon Nget, her obviously below-market salary of "200 something" dollars a week,[67] and her interest in the holding company that owns the building in which the Saigon Grill's Second Avenue location was located.[68]

In response to Plaintiffs' testimony, Michelle Nget claimed to have no knowledge of delivery workers' shifts or what type of work they did while waiting to make deliveries, despite working alongside delivery workers "very often" over a course of many years.[69]  Michelle Nget further denied having ever assigned the delivery workers any type of work,[70] or having ever

---

(continued…)

Decl. ¶ 12; Xian Yi Chen Decl. ¶ 11; Xue Yong Huang Decl. ¶ 11; Yu Guan Ke Decl. ¶ 12; Yu Ming Yu Decl. ¶ 11; Yu Xing Zhou Decl. ¶ 12.

[65] See, e.g., Bao Jian Chen Tr. 253:25-254:4; Li Qiang Lin 264:3-7; Shu Hui Chen 268:9-17; Bao Guo Xie 297:12-22; Yu Ming Yu Tr. 314:12-17; Jian Yun Chen Tr. 155: 10-21; Bing Xing Li Decl. ¶ 10; Yi Lan Lin Decl. ¶ 10.

[66] See, e.g., Zhi Gui Xie Tr. 47:17, 48:10, 77:6; Xin Wei Lin Tr. 142:16, 22; Jian Yun Chen Tr. 156:13, 17-18; Yi Lan Lin Tr. 170:13, 16; Yu Xing Zhou Tr. 174:19, 23; Wen Da Chen Tr. 185:14, 20; Guo Qi Chen Tr. 193:25, 194:2-3; Shu Hua Chen Tr. 199:19-21; Xian Yi Chen Tr. 230:7, 9, 231:10-13; Bao Jian Chen Tr. 255:5, 8; Li Qiang Lin Tr. 265:9, 11; Shu Hui Chen Tr. 270:25, 271:8-9; Lian Guan Chi Tr. 283:5, 14-16; Guo Jin Chen Decl. ¶¶ 20, 22; Bao Guo Xie Tr. 299:19, 21; Mu Lei Xie Tr. 309:3, 5; Yu Guan Ke Tr. 323:12, 324:1-3; Jian Le Lin Decl. ¶ 19; Wen Zhong Chen Decl. ¶ 23.

[67] Michelle Nget Tr. 420:24-421:5.

[68] Michelle Nget Tr. 423:12-424:1.

[69] Michelle Nget Tr. 422:18-423:4.

[70] Michelle Nget Tr. 422:21-23.

hired, fired, or interviewed a single Plaintiff.[71]  Plaintiffs submit that this testimony is simply not credible.

Defendant Sung Truong, known as Tony, is a longtime friend of Simon Nget[72] and oversaw the delivery operations at the Second Avenue, and later, University Place locations, where Defendants Simon and Michelle Nget spent less time.  The evidence has shown that Sung Truong hired many of the Plaintiffs in this action.[73]  He also fired Plaintiffs Jie Chen and Rui Guan Xie, who were the subject of customer complaints about late deliveries,[74] and Plaintiff Shu Hua Chen, who failed to deposit delivery money with the cashier.[75]

Because Sung Truong worked twelve hours each weekday and five-and-a-half hours on Saturdays and Sundays,[76] all of the Plaintiffs who worked at the Second Avenue and University Place locations have personally experienced his control over their working conditions.  The evidence demonstrates that Sung Truong supervised delivery workers,[77] set their work schedules,[78] and assigned them non-delivery "sidework."[79]  The record further indicates that

---

[71] Michelle Nget Tr. 416:15-18.

[72] He has been Simon Nget's friend since they met in high school and has worked for Simon Nget since 1996.  (Sung Truong Tr. 433:1-6, 440:2-10).

[73] See, e.g., Qi Hua Lian Tr. 114:17-24; Xin Wei Lin Tr. 135:7-8; Rui Guan Xie Tr. 181:21-25; Shu Hua Chen Tr. 196:20-22; Xiang Wei Chen 218:21-219:5; Li Qiang Lin 265:21-266:1; Ming Lin Tr. 329:15-18; Jie Chen Decl. ¶ 17; Xian Yi Chen Decl. ¶ 23.

[74] Jie Chen Decl. ¶ 17; Rui Guan Xie Decl. ¶ 19.

[75] Shu Hua Chen Decl. ¶ 22.

[76] Sung Truong Tr. 440:14-442:9.

[77] See, e.g., Zhi Gui Xie Tr. 53:20-22; 78:23-25; De Kui Xie Tr. 95:4-15; Qi Hua Lian Tr. 114:24-115:1. 115:12-16, 116:2-6; De Shun Chi Decl. ¶ 19; Jie Chen Decl. ¶ 18; Mu Lei Xie Decl. ¶ 22; Rui Guan Xie Decl. ¶ 18; Shu Hua Chen Decl. ¶ 21; Shu Jian Chen Decl. ¶ 20; Wen Zhong Chen Decl. ¶ 28; Xian Yi Chen Decl. ¶¶ 23-24; Xin Wei Lin Decl. ¶ 19; Xue Yong Huang Decl. ¶ 26; Zhao Yu Dong Decl. ¶ 17.

[78] See, e.g., De Kui Xie Tr. 96: 13-18; Qi Hua Lian Tr. 130:18-131:1; Xiang Wei Chen Tr. 221:13-14 (add Af); De Shun Chi Decl. ¶ 19; Ming Lin Decl. ¶ 15; Rui Guan Xie Decl. ¶ 18; Shu Hua Chen Decl. ¶ 21; Xian Yi Chen Decl. ¶¶ 23-24; Xin Wei Lin Decl. ¶ 19.

Sung Truong oversaw pay-related issues for the delivery workers, for example, by telling them what their wages would be,[80] sometimes distributing their pay,[81] and, on at least one occasion, giving Plaintiff De Kui Xie a check and requiring him to return the proceeds.[82]  Like Michelle Nget, Sung Truong also imposed fines on Plaintiffs for various infractions.[83]

In response to Plaintiffs' testimony, Sung Truong claimed at trial that he never had anything to do with the delivery workers, that he never had authority over them, and that he never assigned them any non-delivery work.[84]  Despite Simon Nget's earlier testimony at trial that Sung Truong was a "manager,"[85] Mr. Truong testified that he did not have "any authority in [the restaurant] whatsoever."[86]  He claimed that he never once hired or fired a single employee and that Simon Nget, alone, was responsible for these personnel decisions.[87]  Plaintiffs submit that Sung Truong's testimony regarding his duties is not credible given its inconsistency with his function at the restaurants, namely, overseeing operations when the Ngets were not present.

Defendant Leana Nget, Simon Nget's older sister, also supervised and controlled the delivery operation at the Amsterdam location from 11:30 a.m. until 5:00 p.m., when Michelle

---

(continued…)

[79] See, e.g., De Kui Xie Tr. 110:14:19; Qi Hua Lian Tr. 129:12-17, 130:3-10; Xin Wei Lin Tr. 140:8-13, 141:9-19; Xiang Wei Chen Tr. 14-15; Wen Rui Zheng Tr. 225:5-11; Jie Chen Decl. ¶ 10; Ming Lin Decl. ¶ 15; Mu Lei Xie Decl. ¶ 22; Rui Guan Xie Decl. ¶ 18; Xian Yi Chen Decl. ¶¶ 23-24; Zhao Yu Dong Decl. ¶ 17.

[80] See, e.g., Rui Guan Xie Decl. ¶18; Xian Yi Chen Decl. ¶ 23; Xin Wei Lin Decl. ¶ 19.

[81] See, e.g., De Kui Xie Tr. 96:4-12; De Shun Chi Decl. ¶ 19; Jie Chen Decl. ¶ 18.

[82] De Kui Xie Tr. 88:2-22.

[83] See, e.g., De Kui Xie Tr. 100: 2, 6-7; Rui Guan Xie Tr. 181:6, 10; Rui Guan Xie Decl. ¶ 17; Jie Chen Decl. ¶ 15; Xue Yong Huang Decl. ¶ 20-21; Shu Hua Chen Tr. 199:21-200:6.

[84] Sung Truong Tr. 435:6-7 435:4-5, 435:19-436:4.

[85] Simon Nget Tr. 413:19-20.

[86] Sung Truong Tr. 436:2-4.

[87] Sung Truong Tr. 435:8-11.

Nget would arrive.[88]  Among her responsibilities, Leana would assign the delivery workers "sidework" when they were not making deliveries.[89]  Because of the control that she exercised over Plaintiffs, Leana Nget is also an employer who may be held personally liable.

Given the testimony of Plaintiffs regarding the substantial responsibilities of each of the individually-named Defendants, which shows that Defendant Simon Nget relied heavily on his family and Sung Truong to manage a large, sophisticated operation, Plaintiffs urge the Court to find each of these individuals to be employers under FLSA and New York Labor Law.

---

[88] See, e.g., Zhi Gui Xie Tr. 36:9-17, 45:23-25; Bing Xing Li Decl. ¶ 19; Guo Qi Chen Decl. ¶ 7; Jian Le Lin Decl. ¶ 22; Jian Yun Chen Decl. ¶26; Li Qiang Lin Decl. ¶ 25; Lian Guan Chi Decl. ¶ 22; Shu Hui Chen Decl. ¶ 25; Wen Da Chen Decl. ¶ 24; Wen Zhong Chen Decl. ¶ 26; Xin Wei Lin Decl. ¶ 22; Yi Lan Lin Decl. ¶ 23; Yu Ming Yu Decl. ¶ 26.

[89] See, e.g., Jian Yun Chen Decl. ¶ 26; Li Qiang Lin Decl. ¶ 25; Wen Da Chen Decl. ¶ 24.

## <u>CONCLUSION</u>

The authorities cited above and the evidence offered at trial demonstrate that each Defendant is liable to each Plaintiff, as set forth in the attached damages calculations.  Plaintiffs respectfully request that the Court enter judgment in their favor and allow Plaintiffs to submit additional briefing to aid in the computation of prejudgment interest and attorneys' fees.[90]

Dated:   New York, New York
             July 11, 2008

DAVIS POLK & WARDWELL

By:      /s/ Matteo J. Rosselli
         Ronnie Abrams (RA-4610)
         Jonathan L. Adler (JA-7424)
         Matteo J. Rosselli (MR-6422)
         Edward Sherwin (ES-3072)
         William R. Miller (WM-9975)
         450 Lexington Avenue
         New York, NY 10017
         (212) 450-4000

         Kenneth Kimerling (KK-5762)
         Asian American Legal Defense
            and Education Fund
         99 Hudson Street
         New York, New York 10038
         (212) 966-5932

         *Attorneys for Plaintiffs*

---

[90] Plaintiffs' counsel, though representing Plaintiffs <u>pro bono</u>, intend to seek attorneys' fees at the customary rate for practitioners in the area of wage-and-hour litigation if Plaintiffs prevail at trial.  <u>See</u> <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 522 F.3d 182, 184 n.2 (2d Cir. 2007, amended Apr. 10, 2008).