UNITED STATES DISTRICT COURT
SOUTHERN OF NEW YORK

YU G. KE, SHU HUA CHEN, JIAN L. LIN, BAO J. CHEN, GUO Q. CHEN, JIAN Y. CHEN, JIE CHEN, MING H. CHEN, SHU HUI CHEN, SHU JIAN CHEN, SHU JIN CHEN, WEN D. CHEN, WEN Z. CHEN, XIAN Y. CHEN, XIANG Y. CHEN, GUO Q. CHEN, DE S. CHI, LIAN G. CHI, ZHAO Y. DONG, XUE Y. HUANG, BING X. LI, QIANG H. LI, QI H. LIAN, LI Q. LIN, MING LIN, XIN W. LIN, YI L. LIN, BAO G. XIE, DE K. XIE, MU L. XIE, RUI G. XIE, ZHI G. XIE, RUI H. YOU, YU M. YU, WEN R. ZHENG, and YU X. ZHOU,

Plaintiffs,

- against -

SAIGON GRILL, INC. SAIGON GOURMET RESTAURANT INC., SAIGON SPICE INC., SAIGON BRASSERIE INC., SAIGON WEST INC., SIMON NGET a.k.a. CHANG S. NGET, MICHELLE LU NGET a.k.a. PEI YING NGET, LEANA NGET, RICHARD K. NGET a.k.a. CHANG HAO NGET, and SUNG TRUONG,

Defendants.

No. 07 Civ. 2329 (MHD)

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR THE ENTRY OF A FINAL JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 54(b), OR IN THE ALTERNATIVE, AN EXPEDITED DISCOVERY SCHEDULE ON THE ISSUE OF DEFENDANTS' WEALTH**

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017

ASIAN AMERICAN LEGAL DEFENSE
AND EDUCATION FUND
99 Hudson Street
New York, New York 10038

*Attorneys for Plaintiffs*

In accordance with the Court's instruction at the status conference held on December 2, 2008, Plaintiffs respectfully submit this Memorandum of Law in support of their motion for the entry of a final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure on all claims other than those for retaliation, or if such relief is denied, for an expedited discovery schedule on the issue of Defendants' wealth.

**PRELIMINARY STATEMENT**

Rule 54(b) certification is appropriate in this case because all but one of the causes of action raised, and all claims of 14 Plaintiffs, have been finally resolved. The only factor weighing against certification—the possibility of piecemeal appeals—is heavily outweighed in this case by the financial hardship and prejudice that Plaintiffs will face if they must wait much longer to gain access to the protections that the law affords to judgment creditors. Defendants' recent actions suggest that they may be taking steps to hide, liquidate, and/or waste their hard assets—namely, the two existing Saigon Grill restaurants and Defendant Michelle Nget's interest in a building that was once home to a Saigon Grill restaurant. These developments call into question whether Defendants have any intention of satisfying a judgment. Recent criminal charges brought against defendants Simon and Michelle Nget further call into question whether Defendants will have the ability to satisfy a judgment in the future. All indications suggest that Plaintiffs' chances of fully enforcing a judgment are diminishing by the day.

**BACKGROUND**

On October 20, 2008, this Court issued a Memorandum and Order adjudging Defendants liable on all claims raised at trial, including claims for wage-and-hour violations and for retaliatory discharge. The Court's decision assessed liability of approximately $4.634 million for all claims not including retaliation. For the 14 Plaintiffs who were not retaliated against, the

Court's Memorandum and Order constitutes a final determination on all of their claims. For the remaining 22 Plaintiffs, only the issue of damages on their retaliation claims remains. The determination of those damages will be preceded by a ruling on whether Plaintiffs' immigration status is relevant to that issue.[1] Since the issuance of the Court's decision on October 20, 2008, there have been a number of developments that bring into question whether Defendants have any intention, or will have the ability in the future, to satisfy a judgment.

Most troubling are developments regarding the property at 1700 Second Avenue, which was formerly the home of a Saigon Grill restaurant. Upon being asked during a phone conversation on November 25, 2008 about defendant Michelle Nget's interest in this property, defense counsel conceded that Ms. Nget had such an interest at the time this suit was brought but indicated that she has since divested her interest. (Declaration of Matteo J. Rosselli dated December 5, 2008 ("Rosselli Decl."), ¶ 3). Defense counsel refused to provide any additional information. (Id.). Later, Plaintiffs learned that, on November 3, 2008, a civil action was initiated against defendants Simon Nget, Michelle Nget, Leana Nget, Richard Nget, and 1700 Holding LLC, the legal owner of the building, in connection with a sale-leaseback contract on the Second Avenue property. (Id. Ex. 1). According to the complaint, the defendants entered into an amended sale-leaseback contract on July 25, 2008—less than a month after the trial of this matter had ended—whereby they agreed to sell their interest in the property and enter into a five-year commercial lease to operate a Saigon Grill restaurant at the Second Avenue property. (Id. Ex. 1, ¶¶ 11–13). The lease was personally guaranteed by Richard Nget, the older brother of

[1] Plaintiffs' argument on this issue is set forth on pages 32–36 of Plaintiffs' Post-Trial Memorandum. Should the Court decide that information regarding Plaintiffs' immigration status is relevant to its determination of damages on retaliation, Plaintiffs have conferred with defense counsel and are prepared to submit a stipulation setting forth those Plaintiffs who have documented status and those—who for purposes of this application only—would invoke their Fifth Amendment privilege if asked to disclose their immigration status.

Simon Nget, who was voluntarily dismissed as a defendant in this action. (Id. Ex. 1, ¶ 15). It is alleged that the defendants fraudulently induced the buyer to enter the amended sale-leaseback contract by failing to give notice that the defendants were involved in this lawsuit. (Id. Ex. 1, ¶¶ 2; 54–60). Although the Second Avenue property has not yet been transferred, the defendants have been advanced a $1,750,000 deposit, which they allegedly refuse to return to the buyer. (Id. Ex. 1, ¶¶ 12; 30).

There have been other developments which bring into question Defendants' intention of preserving the going-concern value of the existing Saigon Grill restaurants. At the status conference on December 2, 2008, defense counsel made the Court aware that Defendants had asked Plaintiffs to simply take the two Saigon Grill restaurants in satisfaction of any judgment. However, Defendants have at all points refused to "open the books" of the Saigon Grill restaurants or to provide any information regarding their assets. (Id. ¶ 4). Moreover, defendant Simon Nget has not been seen at the flagship restaurant located at 620 Amsterdam Avenue since July or August 2008. (Declaration of Jian Yun Chen dated December 5, 2008 ("Chen Decl."), ¶ 5). This extended absence is in stark contrast to the undisputed testimony at trial, which indicated that Mr. Nget worked at both Saigon Grill restaurants seven days a week, was involved in all areas of their operation, and never took a vacation. (See S. Nget Tr. 344:23–345:21; 354:19–24). No explanation for Mr. Nget's absence has been provided. (Chen Decl. ¶ 6). Tellingly, the timing of Mr. Nget's absence corresponds with the point at which Defendants entered into an agreement to lease space at Second Avenue for a new Saigon Grill restaurant, apparently under the name of Richard Nget, who was voluntarily dismissed as a defendant in this action.

Further casting into doubt Defendants' ability to satisfy a judgment, on December 3, 2008, defendants Simon and Michelle Nget were criminally charged in Supreme Court, New York County, in connection with the events underlying this action, with a total of 151 counts each of Falsifying Business Records in the First Degree, 45 counts of Tampering with Physical Evidence, and 46 counts of Offering a False Instrument for Filing in the First Degree, all class E felonies which carry a term of up to four years in prison. (Rosselli Decl. Ex. 2).

**ARGUMENT**

**I. ENTRY OF A FINAL JUDGMENT IS APPROPRIATE UNDER RULE 54(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Rule 54(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[w]hen an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Restated as a three-part test,

> (1) multiple claims or multiple parties must be present, (2) at least one claim, or the rights and liabilities of at least one party, must be finally decided within the meaning of 28 U.S.C. § 1291, and (3) the district court must make "an express determination that there is no just reason for delay" and expressly direct the clerk to enter judgment.

Ginett v. Computer Task Group, Inc., 962 F.2d 1085, 1091 (2d Cir. 1992) (emphasis in original). The determination of the third factor—whether there is "no just reason for delay"—is left to the sound discretion of the trial court. Id. at 1092. In making such a determination, the court must consider the interests of judicial administration and the equities of the case. Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 8 (1980). "Equitable factors considered by the Court include, but are not limited to, (1) the prejudgment interest rate, (2) the liquidity of the debts at issue, (3) the threat of either party becoming insolvent, and (4) the possibility that counterclaims will create

setoffs against the judgment." Angoss II P'ship v. Trifox, Inc., No. C 98-1459 SI, 2000 WL 288435, at *2 (N.D. Cal. Mar. 10, 2000) (citing Curtiss-Wright, 446 U.S. at 11–13).

**A. All Claims Other Than Those for Retaliation Have Been Finally Decided**

In this case, there can be no dispute that the first two criteria of Rule 54(b) are met. This Court issued a Memorandum and Order on October 20, 2008 that constitutes a final determination with respect to all claims brought by 14 of the Plaintiffs in this action. As for the remaining 22 Plaintiffs, the Court's Memorandum and Order constitutes a final determination on all of their claims, with the exception of those for retaliation. Only the issue of damages on retaliation remains to be decided.

**B. There is No Just Reason for Delaying the Entry of a Final Judgment as to All Claims Other Than Those for Retaliation**

*i. Interests of Judicial Economy*

Rule 54(b) certification would not undermine interests of judicial economy in this case. The remaining retaliation claims are separable, both legally and factually, from the issues already adjudicated and would only provide Plaintiffs further relief with no possibility of setoff—i.e., a reduction in the amount of damages already granted. See Ginett, 962 F.2d at 1096. There is no possibility that this Court's further decision on damages for retaliation would lead to judicial inefficiency, by for example, requiring that the Second Circuit decide the same issue twice or by mooting a future determination of that court. See id. at 1095. Furthermore, the only interest of judicial economy weighing against Rule 54(b) certification in this case—the potential for piecemeal appeals—is heavily outweighed by the unfair prejudice that Plaintiffs have encountered and will continue to encounter by waiting for the entry of judgment.

*ii. Plaintiffs' Potential Difficulties in Recovery*

Courts in this circuit have recognized that Rule 54(b) certification is especially appropriate where further delay could impair a Plaintiff's ability to collect a final judgment. See, e.g., Log Plastic Prods. v. Robert Linkletter Assocs., Inc., No. 87 Civ. 3482 (SWK), 1988 WL 68178, at *3 (S.D.N.Y. June 20, 1988) (granting Rule 54(b) certification where plaintiff sought judgment "simply so that it may be docketed and made a matter of public record in terms of its potential standing in a potential bankruptcy action by defendant"); see also Capital Distrib. Servs., 462 F. Supp. 2d at 356 (granting Rule 54(b) certification where there was a "serious risk that absent prompt entry of judgment, [the defendant would] succeed in rendering an eventual final judgment either partially or wholly uncollectible").

In this case, the evidence suggests that Plaintiffs' ability to reach sources of recovery is diminishing by the day. Defendants Simon and Michelle Nget currently face numerous other financial obligations, notably, those relating to the recently brought civil and criminal actions, which raise the possibility of long and costly trials, fines, and even potential imprisonment. Furthermore, the contracted-for sale of the Second Avenue property suggests that Defendants—whose business proceeds are already highly liquid—have, without any notice to Plaintiffs, been further trying to liquidate their remaining hard assets, a step that will make it even more difficult for Plaintiffs to enforce a judgment. There is also evidence that Defendants have begun to neglect the remaining hard assets from which Plaintiffs may collect—most notably, the Saigon Grill restaurants themselves—as defendant Simon Nget, who has actively run the Saigon Grill for many years, has been absent from the restaurant at 620 Amsterdam Avenue since the summer without any explanation. (Chen Decl. ¶¶ 5, 6). The unexplained absence of Mr. Nget, the apparent intention of Defendants to open another restaurant at Second Avenue in the name of a

family member who was not held liable in this action, and defense counsel's suggestion that Plaintiffs simply take the Saigon Grill restaurants in satisfaction of a judgment, without even looking at the restaurants' financial records, all raise serious red flags that Defendants may be shifting assets and abandoning any commitment to preserving the going-concern value of the existing restaurants.

Plaintiffs finally submit that the risk of Defendants engaging in opportunistic behavior is magnified in this case, given this Court's prior findings, most notably, that Defendants gave "manifestly incredible" testimony at trial, adopted contrivances which "bespeak an intention to mislead governmental authorities," and knowingly and deliberately disregarded their legal obligations under federal and state labor law. Ke v. Saigon Grill, Inc., No. 07 Civ. 2329 (MHD), 0017 WL 1046, at *5, 12 (S.D.N.Y. Oct. 21, 2008). Defendants now stand criminally accused for these acts and face a civil complaint for fraudulently failing to disclose the existence of this action to a counterparty on a sale-leaseback transaction. Given this history, Plaintiffs have no confidence that Defendants will act in accordance with their legal obligations. In the absence of the immediate entry of judgment, Plaintiffs will be prejudiced, since they will have to wait to gain access to procedures, like discovery, that the law affords to judgment creditors.

*iii. The Unavailability of Prejudgment Interest*

While Plaintiffs wait for a judgment, they will be unable to make any beneficial use of the money to which they are entitled for damages dating back as far as 1998. Because prejudgment interest is not available on Plaintiffs' Fair Labor Standards Act claims, the amount of an eventual judgment on these claims will be identical to the amounts contained in the Court's October 20, 2008 Memorandum and Order, regardless of how far into the future a final judgment may be entered. See Curtiss-Wright, 446 U.S. at 11 ("If the judgment is otherwise certifiable,

the fact that a litigant who has successfully reduced his claim to judgment stands to lose money . . . is surely not a 'just reason for delay.'"); see also Ginett, 962 F.2d at 1097 (approving entry of final judgment under Rule 54(b) because when plaintiff "is legally entitled to a judgment on his severance pay claim, he should be able to execute upon it now, and should not be penalized for combining his separate claims against [defendant] in one complaint"). In the meantime—while the parties and Court address legal issues related to retaliation—Defendants may, without any additional cost, continue to earn interest on and make any other use of assets that will eventually be used to satisfy a judgment. Cf. Donovan v. Sovereign Sec., Ltd., 726 F.2d 55, 58 (2d Cir. 1984) (noting that prejudgment interest serves the purpose of "denying the errant employer the free use of the money"); Capital Distrib. Servs., Ltd. v. Ducor Express Airlines, Inc., 462 F. Supp. 2d 354, 359 (E.D.N.Y. 2006) (noting, in granting Rule 54(b) certification, that the Plaintiff's ability to eventually recover was "unfairly dependent" on the return from the use to which the defendant had decided to put its limited assets—risky investments in the Las Vegas real estate market).

## II. PLAINTIFFS ARE ENTITLED TO PUNITIVE DAMAGES ON THEIR RETALIATION CLAIMS

Where an employer violates FLSA's anti-retaliation provision, 29 U.S.C. § 216(b), punitive damages are available. See Sines v. Serv. Corp. Int'l, 03 Civ. 5465(SC), 2006 U.S. Dist. LEXIS 82164, at *4–10 (S.D.N.Y. Nov. 8, 2006) (affirming jury's award of $130,000 in punitive damages on top of award of approximately $65,000 in back pay and liquidated damages); see also Travis v. Gary Cmty. Mental Health Ctr., Inc., 921 F.2d 108, 111 (7th Cir. 1990) (stating that compensatory, punitive, and emotional distress damages are available).

The standard for punitive damages under federal law allows a factfinder to award punitive damages "when the defendant's conduct is shown to be motivated by evil motive or

intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983).[2] Under this standard, there is no need to "show that the defendant committed egregious or outrageous acts." Cush-Crawford v. Adchem Corp., 271 F.3d 352, 356 (2d Cir. 2001) (citing Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 538 (1999)).[3] Defendants' actions in this case evince a reckless indifference to Plaintiffs' legal rights. In March 2007, Defendant Simon Nget, upon learning that Plaintiffs intended to bring this suit, told one plaintiff that "[i]f you want to talk about law, none of us here do things according to the law, including me. So if we cannot come to an agreement, then I will goddamnit close down the delivery department." (Rosselli Decl. Ex. 3, ¶ 29). Simon and Michelle Nget, having had no success in deterring Plaintiffs from taking further steps to initiate suit, then called a midnight meeting of the workers at the Amsterdam restaurant and attempted to coerce the workers into signing away their legal rights, telling them that they would otherwise be fired. (Id. Ex. 3, ¶ 30). Defendants' willful disregard of their legal obligations is consistent with this Court's other findings, for example, that Defendants fined Plaintiffs for minor infractions and requiring Plaintiffs to cash checks and return the proceeds. Ke, 0017 WL 1046, at *6, 12. Plaintiffs respectfully submit that the nature of their retaliatory discharge warrants their receiving at least an opportunity to obtain further financial information that may support their punitive damages claim.

---

[2] Although Smith involved a claim brought pursuant to 42 U.S.C. § 1983, its standard for punitive damages has been applied outside that context to other federal causes of action. See Jowers v. DME Interactive Holdings, Inc. No. 00 Civ. 4753 (LTS)(KNF), 2006 WL 1408671, at *4 (S.D.N.Y. May 22, 2006).

[3] The same standard for awarding punitive damages should apply to Plaintiffs' claims for retaliation under state law. See Greenbaum v. Svenska Handelsbanken, 979 F. Supp. 973, 983 (S.D.N.Y. 1997) (noting in Title VII case that the substantive standard for punitive damages is the same under federal and state law).

Given its relevance to punitive damages, information regarding a defendant's wealth is discoverable after a finding of liability. See Davis v. Ross, 107 F.R.D. 326, 327 (S.D.N.Y 1985) (holding that discovery of defendant's financial information is proper on the issue of punitive damages after a finding of liability); see also McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc., 256 A.D.2d 269, 271 (1st Dep't 1998) ("The wealth of a defendant is material to the assessment of punitive damages."). Therefore, if the Court denies Plaintiffs' motion for Rule 54(b) certification, an expedited discovery schedule should be set on the issue of Defendants' wealth.

**CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their motion for entry of a final judgment, pursuant to Federal Rule of Civil Procedure 54(b), on all claims other than those for retaliation, or if such relief is denied, for an expedited discovery scheduled on the issue of Defendants' wealth, and for whatever further relief the Court deems just and proper.

Dated: New York, New York
December 5, 2008

DAVIS POLK & WARDWELL

By: /s/ Matteo J. Rosselli

Ronnie Abrams
Jonathan L. Adler
Matteo J. Rosselli
Edward Sherwin
William R. Miller
450 Lexington Avenue
New York, NY 10017
matteo.rosselli@dpw.com
(212) 450-4000

Kenneth Kimerling
Asian American Legal Defense
and Education Fund
99 Hudson Street
New York, New York 10038
(212) 966-5932

*Attorneys for Plaintiffs*