UNITED STATES DISTRICT COURT
SOUTHERN OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

YU G. KE, SHU HUA CHEN, JIAN L. LIN, BAO J.     Civil No. 07 Civ. 2329 (MHD)
CHEN, GUO Q. CHEN, JIAN Y. CHEN, JIE CHEN,
MING H. CHEN, SHU HUI CHEN, SHU JIAN CHEN,
SHU JIN CHEN, WEN D. CHEN, WEN Z. CHEN, XIAN
Y. CHEN, XIANG Y. CHEN, GUO Q. CHEN, DE S. CHI,
LIAN G. CHI, ZHAO Y. DONG, XUE Y. HUANG, BING
X. LI, QIANG H. LI, QI H. LIAN, LI Q. LIN, MING LIN,
XIN W. LIN, YI L. LIN; BAO G. XIE, DE K. XIE, MU L.
XIE, RUI G. XIE, ZHI G. XIE, RUI H. YOU, YU M. YU,
WEN R. ZHENG, and YU X. ZHOU,

                              Plaintiffs,

                   - against -

SAIGON GRILL, INC. SAIGON GOURMET
RESTAURANT INC., SAIGON SPICE.INC., SAIGON
BRASSERIE INC., SAIGON WEST INC., SIMON NGET
a.k.a. CHANG S. NGET, MICHELLE LU NGET a.k.a. PEI
YING NGET, LEANA NGET, RICHARD K. NGET a.k.a.
CHANG HAO NGET, and SUNG TRUONG,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**DEFENDANTS' SUPPLEMENTAL POST-TRIAL BRIEF**

**SAPIR & FRUMKIN LLP**
Attorneys for Plaintiff
399 Knollwood Road, Suite 310
White Plains, New York 10603
(914) 328-0366

# **TABLE OF CONTENTS**

PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      1.      Remedies Generally Available for Retaliation Claims . . . . . . . . . . . . . . . . . . . . . 3

            a.      Statutory Remedies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

            b.      Availability of Punitive Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      2.      Remedies Available to Undocumented Workers for Retaliation Claims . . . . . . . 6

            a.      *Hoffman Plastic Compounds, Inc. v. NLRB* . . . . . . . . . . . . . . . . . . . . . . 6

            b.      *Hoffman* Is Not Limited to Its Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            c.      Awards of Compensatory and Punitive Damages . . . . . . . . . . . . . . . . . 11

            d.      New York Labor Law Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      3.      Evidence on Immigration Status Must Be Received and Considered . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Pursuant to the Court's February 2, 2009 endorsed order, Defendants hereby submit this supplemental brief on the open issue of the relief to be awarded on Plaintiffs' retaliation claims.

## PROCEDURAL HISTORY

On June 13, 2008, Plaintiffs filed a Plaintiffs' Pre-Trial Memorandum, in which they argued, among other things, that Plaintiffs are entitled to relief, including punitive damages, on their claims for retaliation. Plaintiffs' Pre-Trial Memorandum at 23-25.

On or about June 20, 2008, a telephonic conference was held by the court at which Plaintiffs' counsel made a motion in limine to preclude cross-examination regarding their immigration and tax status. Also on or about June 20, 2008, following the conference, Plaintiffs' counsel submitted to the Court a copy of a case referenced during the conference, *Rengifo v. Erevos Enters., Inc.*, 2007 U.S. Dist. LEWIS 19928 (S.D.N.Y. Mar. 20, 1997).

At the trial, on June 23, 2008, the Court granted Plaintiffs' motion in limine to preclude cross-examination regarding their immigration and tax status, "with the limited exception, which is in fact conceded by the plaintiffs that these areas may be relevant ultimately to the question or damages on the retaliation claim." Transcript at 5. Accordingly, the Court bifurcated the issue of damages for alleged retaliation. Transcript at 5.

On July 11, 2008, Plaintiffs filed Plaintiffs' Post-Trial Memorandum, in which they argued, among other things, that damages, including compensatory and punitive damages, are available to all workers who were retaliated against, regardless of immigration status. Plaintiffs' Post-Trial Memorandum at 32-36. On or about July 24, 2008, Defendants filed Defendants Post-Trial Memorandum. On or about August 1, 2008, Plaintiffs filed Plaintiffs' Reply to Defendants' Post-Trial Memorandum, in which they objected to representations regarding Plaintiffs' immigration

1

status on the grounds that there was no evidence relating to Plaintiffs' immigration status in accordance with the Court's ruling on Plaintiffs' motion *in limine*. Plaintiffs' Reply to Defendants' Post-Trial Memorandum at 4.

In its October 21, 2008 Memorandum and Order, the Court found Defendants liable on the retaliation claims of twenty-two (22) plaintiffs but withheld a determination of the relief to which those plaintiffs would be entitled. The Court noted that, generally speaking, a plaintiff who prevails on a retaliation claim under the FLSA may be entitled to employment, reinstatement, promotion, backpay, liquidated damages, and possibly punitive damages. However, the Court stated, "As for whether the plaintiffs' immigration status – which does not appear on the record, having been excluded by the court from this phase of the case – should affect the nature or the scope of the relief available to them, *see generally Hoffman Plastic Compounds, Inc. v. N.L.R.B.*, 535 U.S. 137, 149, 151 (2002)(precluding back-pay award to undocumented alien who proferred false documents to an unsuspecting employer), we need not address that question at this stage since the relief portion of the retaliation claim has been bifurcated and postponed to a second stage of this proceeding." October 21, 2008 Memorandum and Order at 49-50; *Ke v. Saigon Grill, Inc.*, __ F.Supp.2d __, 2008 U.S. Dist. LEXIS 86300, 2008 WL 1046 (S.D.N.Y. Oct. 21, 2008)

On or about December 5, 2008, Plaintiffs filed Plaintiffs' Memorandum of Law in Support of Their Motion for the Entry of a Final Judgment Pursuant to Federal Rule of Civil Procedure 54(b), or in the Alternative, an Expedited Discovery Schedule on the Issue of Defendants' Wealth ("Plaintiffs' 54(b) Motion"), in which they argued, among other things, that Plaintiffs are entitled to relief, including punitive damages, on their claims for retaliation. Plaintiffs' 54(b) Motion at 9-11. On or about December 10, 2008, Defendants filed the Affirmation of S. Michael Weisberg in

2

Opposition to Plaintiffs' Motion for a final judgment or in the alternative for an expedited discovery schedule on Defendant's wealth.

In its December 12, 2008 Memorandum and Order, the Court noted that the outstanding issues related to the retaliation claims would delay final resolution of this case. The Court stated, "First, the parties must address, and the court must decide, whether the plaintiffs' immigration status is pertinent to the measurement of retaliation damages – an issue that will require an assessment of the impact of the Supreme Court's decision in *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 122 S. Ct. 1275, 152 L.Ed.2d 271 (2002). Second, the plaintiffs are seeking an award of punitive damages on their retaliation claims and have requested that they be afforded asset discovery as pertinent to the punitive-damages question." *Ke v. Saigon Grill, Inc.*, 2008 U.S. Dist. LEXIS 104828, at *4-5 (S.D.N.Y. Dec. 12, 2008).

On January 30, 2009, Defendants' counsel submitted a letter requesting an opportunity to submit supplemental briefing on the issue of the relief to be awarded on the retaliation claims, which is still awaiting determination by the Court. On February 2, 2009, the Court issued an endorsed order granting Defendants' request to file supplemental papers on all open issues by February 27, 2009, and granting Plaintiffs an opportunity to reply to such papers by March 6, 2009.

**LEGAL ARGUMENT**

**1.** **Remedies Generally Available for Retaliation Claims**

As an initial matter, it is useful to examine the remedies generally available for retaliation claims where the employee's immigration status is not at issue.

### a. Statutory Remedies

Pursuant to 29 U.S.C. 216(b), "Any employer who violates the [retaliation] provisions of section 215 (a)(3) of [the FLSA] shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215 (a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." Similarly, pursuant to New York Labor Law § 215(2), when an employer violated the retaliation provisions, the court may "order all appropriate relief, including rehiring or reinstatement of the employee to his former position with restoration of seniority, payment of lost compensation, damages, and reasonable attorneys' fees."

### b. Availability of Punitive Damages

Plaintiffs assert that, in addition to the remedies specified in the statutory language above, "[p]unitive damages are also available" for retaliation claims under the FLSA. Plaintiffs' Pretrial Memorandum of Law at 23, citing *Sines v. Service Corp. Int'l*, 2006 U.S. Dist. LEXIS 82164 (S.D.N.Y. Nov. 8, 2006) and *Travis v. Gary Community Mental Health Ctr., Inc.*, 921 F.2d 108, 111(7th Cir. 1990); *see also* Plaintiffs' 54(b) Motion at 9-10.

However, as the court in *Sines* correctly noted, the Second Circuit has not decided this issue. *See Sines*, 2006 U.S. Dist. LEXIS at * 4. Other circuits that have decided this issue are split. *See Travis v. Gary Community Mental Health Ctr., Inc.*, 921 F.2d 108, 111(7th Cir. 1990)(holding that punitive damages may be awarded); *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928 (11th Cir. 2000)(holding that punitive damages go beyond the statutory goal of making a plaintiff whole again and are therefore not available in an anti-retaliation claim). The court in *Snapp* reasoned that punitive damages are not available under the FLSA retaliation provision for three reasons: 1) all of

the relief provided in section 216(b) is meant to compensate the plaintiff, while punitive damages are not; 2) in contrast to the make-whole provisions of section 216(b), Congress specifically provided for punitive sanctions in section 216(a); and 3) the "legal relief" language in the FLSA is exactly the same as that found in the ADEA, and so the FLSA should be interpreted similarly to preclude an award of punitive damages. 208 F.3d at 933-939. In addition, while *Sines* held that punitive damages could be awarded, a number of other district court cases have held that punitive damages are unavailable in a FLSA retaliation action. *See, e.g., Waldermeyer v. ITT Consumer Corp.*, 782 F. Supp. 86 (E.D. Mo. 1991); *Glorioso v. Williams*, 130 F.R.D. 664, 665 (E.D. Wis. 1990); *Huang v. Gateway Hotel Holdings*, 520 F.Supp.2d 1137 (E.D. Mo. 2007); *Tucker v. Monsanto Co.*, 2007 U.S. Dist. LEXIS 41806 (E.D. Mo. 2007).

Moreover, punitive damages are generally found to be unavailable when they are not specifically provided for the relevant statute. *See, e.g., Diroma v. National Organization of Industrial Trade Unions Insurance Fund,* 1992 U.S. Dist, LEXIS 7698 (S.D.N.Y. 1992) (finding that punitive damages were not available under ERISA § 1132(a)(1)(B) because the statute did not specifically authorize punitive damages, and "the express inclusion of several specific remedies in the statute represents an implicit exclusion of remedies not listed."); *Dean v. American Sec. Ins. Co*., 559 F.2d 1036 (5th Cir. 1977)(punitive damages not available under the ADEA because not provided for in the statute).

In addition, the cases cited by Plaintiffs for the standard for awarding punitive damages under federal law do not support their argument that punitive damages are available under the FLSA's retaliation provisions, but rather they only state the standard to be applied under other statutes that do provide for punitive damages. Plaintiffs' 54(b) Motion at 10, citing *Smith v. Wade*,

461 U.S. 30, 56 (1983)(§ 1983 actions); *Cush-Crawford v. Adchem Corp.*, 271 F.3d 352, 356 (2d Cir. 2001)(Title VII actions); *Jowers v. DME Interactive Holdings, Inc.*, 2006 WL 1408671 (S.D.N.Y. May 22, 2006)(§ 1983 and New York City Human Rights Law actions); *Greenbaum v. Svenska Handelsbanken*, 979 F.Supp.973, 983 (S.D.N.Y. 1997)(New York City Administrative Code actions). Therefore, it does not follow from these cases that punitive damages may be awarded in FLSA retaliation actions, or if such damages are awarded, that the same standards applied to these other statutes should apply to the FLSA.

Thus, for all of the reasons discussed above, punitive damages should not be awarded for FLSA or New York Labor Law retaliation claims.

**2.     Remedies Available to Undocumented Workers for Retaliation Claims**

    **a.     *Hoffman Plastic Compounds, Inc. v. NLRB***

In *Hoffman Plastic Compounds Inc. v. NLRB*, the United States Supreme Court held that the National Labor Relations Board could not award backpay to an undocumented worker because such an award would violate federal immigration policy, as expressed in the Immigration Reform and Control Act of 1986 ("IRCA"). 535 U.S. 137, 149, 151 (2002). The Supreme Court noted that "[t]here is no reason to think that Congress nonetheless intended to permit backpay where but for an employer's unfair labor practices, an alien-employee would have remained in the United States illegally, and continued to work illegally, all the while successfully evading apprehension by immigration authorities." 535 U.S. at 149. The Court also noted that an undocumented worker could not fulfill his duty of mitigating damages "without triggering new IRCA violations, either by tendering false documents to employers or by finding employers willing to ignore IRCA and hire illegal workers." *Id.* at 151. In addition, the Court found that "to award backpay to illegal

6

aliens...would encourage the successful evasion of apprehension by immigration authorities, condone prior violations of the immigration laws, and encourage future violations." *Id.*

Although the focus in *Hoffman* was on the availability of back pay, reinstatement and front pay are also prohibited because the same rationales and policies apply. *See Flores v. Amigon*, 233 F. Supp. 2d 462, 463 (E.D.N.Y. 2002)(noting that the Court in *Hoffman* vacated the NLRB's award of reinstatement to an undocumented alien because "the Court found that an order for reinstatement of an individual who was not lawfully present in the United States would be contrary to the Court's prior holding in *Sure-Tan Inc. v. N.L.R.B.*, 467 U.S. 883, 81 L. Ed. 2d 732, 104 S. Ct. 2803 (1984), and would violate the subsequently enacted provisions of the IRCA that make it illegal for an employer to hire illegal aliens in the United States. 8 U.S.C. §§ 1324a(a)(1), 1324b, 1324c(a)(1)-(3)."); *Renteria v. Italia Foods, Inc.*, 2003 U.S. Dist. LEXIS 14698 (N.D. Ill. 2003)("the IRCA is the law of the land, and the Supreme Court has made it clear that awarding back pay to undocumented aliens contravenes the policies embedded in that law. An award of front pay would be inappropriate for the same reason: front pay essentially assume that the worker will continue to work for the employer in the future, which is against the law for an undocumented alien.").

Plaintiffs' reliance upon *Rengifo v. Erevos Enterprises, Inc.*, 2007 U.S. Dist. LEXIS 19928 (S.D.N.Y. Mar. 20, 2007), in making their motion *in limine* to exclude evidence regarding Plaintiffs' immigration status is misplaced. The court in *Rengifo* granted the plaintiff's motion for a protective order barring defendants from inquiring into his immigration status. *Id.* at *8. However, the claims at issue in *Rengifo* were for unpaid overtime wages for work performed, not damages for retaliation. "Courts have distinguished between awards of post-termination back pay for work not actually performed and awards of unpaid wages pursuant to the Fair Labor Standards Act. ("FLSA")." *Liu*

7

*v. Donna Karan Int'l, Inc*., 207 F. Supp.2d 191, 192 (S.D.N.Y. 2002); *see also Affordable Housing Foundation, Inc. v. Silva,* 469 F.3d 219, 254 (2d Cir. 2006)("a number of district courts have concluded, even after *Hoffman Plastic*, that IRCA does not preclude such FLSA awards [requiring an employer to pay his undocumented workers the minimum wages prescribed by the FLSA]"); *Flores v. Amigon*, 233 F. Supp. 2d 462 (E.D.N.Y. 2002). Thus, while immigration status may be irrelevant in claims for unpaid wages for work that was performed but not properly compensated, as in *Rengifo, Hoffman* bars awards of backpay for work not performed, as in the instant case.

### b. *Hoffman* Is Not Limited to Its Facts

Plaintiffs argue that *Hoffman* should be limited to its facts, such that an award of backpay would only be barred where the employer has unknowingly hired an undocumented worker who presented fraudulent documentation. *See* Plaintiffs' Post-Trial Memorandum at 33. However, the Court in *Hoffman* did not limit its holding to the facts at issue. Plaintiffs attempt to rely upon *dicta* in Justice Breyer's dissent that failure to award backpay against a knowing employer would be contrary to immigration policy. Plaintiffs' Post-Trial Memo at 34, citing *Hoffman,* 535 U.S. at 155-56. Plaintiffs argue that "no member of the five-Justice majority in *Hoffman Plastic* disavowed Justice Breyer's dissent." Plaintiffs' Post-Trial Memo at 34, fn 47. However, the fact remains that Justice Breyer's views are not included in or recognized by the majority opinion and are only *dicta*, and therefore, are not the law. *See United States v. Goodrich*, 871 F.2d 1011 (11th Cir. 1989)(recognizing that a dissenting opinion in a Supreme Court case "is not endorsed by a majority of the Court. The dissent is not binding precedent."); *Cohens v. Virginia*, 19 U.S. 264 (1821)(explaining why *dicta* is not binding). Thus, *Hoffman* should not be limited to its facts because that was not the apparent intent of the Supreme Court.

Plaintiffs also rely upon the Second Circuit's decision in *Affordable Housing Foundation, Inc. v. Silva*, 469 F.3d 219 (2d Cir. 2006) and the New York Court of Appeals' decision in *Balbuena v. IDR Realty LLC*, 6 N.Y.3d 338 (2006) for the proposition that *Hoffman* should be limited to its facts, in which an undocumented employee gained employment with an unknowing employer by presented false documentation. Specifically, *Affordable Housing Foundation* held that *Hoffman* does not bar an award of compensatory damages to an injured worker under New York Labor Law § 240(1) "where, as in this case, neither the IRCA nor any other law authorized the personal injury being compensated; the employment of the undocumented work originated in a knowing violation of IRCA by the employer rather than the employee; and the jury was instructed to consider the undocumented plaintiff's removability in deciding what, if any, lost United States earnings to award." 469 F.3d at 254. Similarly, the court in *Balbuena* held that "on the records before us in these Labor Law §§ 200, 240(1) and 241(6) cases, and in the absence of proof that plaintiff tendered false work authorization documents to obtain employment, that IRCA does not bar maintenance of a claim for lost wages by an undocumented alien." 6 N.Y. 3d at 363. Thus, neither of these cases is on point because they dealt with lost wages due to a work injury under New York Labor Law, rather than backpay or other relief to be awarded for retaliation.

Moreover, both of these cases explicitly distinguished their facts from the facts in *Hoffman*. *Affordable Housing Foundation*, 469 F.3d at 236 ("Focusing first on factual differences, we note that the injury being remedied in *Hoffman Plastic* was termination while the wrong being compensated in this case is disabling personal injury. The distinction is significant."); *Balbuena*, 6 N.Y.3d at 362 ("plaintiffs have allegedly suffered physical injuries that have limited their ability to be employed, unlike the alien worker in *Hoffman* who suffered no bodily injury whatsoever."). As noted in

9

*Affordable Housing Foundation*, a retaliation claim differs from a work injury claim for legal and policy purposes because a retaliation claim involves a termination that, while based on improper motives, was required by the immigration law, where a work injury claim does not. 469 F.3d at 236. Thus, *Affordable Housing Foundation* and *Balbuena* do not support Plaintiffs' argument that backpay and other relief are not barred against a knowing employer, nor do they lead to a conclusion that backpay may be awarded to an undocumented worker under the retaliation provisions of New York Labor Law.

Plaintiffs also rely upon decisions by Administrative Law Judges in NLRB proceedings, in which backpay was awarded against a "knowing employer." Plaintiffs' Post-Trial Memorandum at 34, citing *Handyfat Trading, Inc.*, NLRB No.29-CA-28181, 2007 WL 2371977 (Aug. 14, 2007); *Mezonos Maven Bakery, Inc.*, NLRB No-29 CA 25476, 2006 WL 3196754 (Nov. 1, 2006). These cases are not binding authority.

Lastly, however, Plaintiffs accurately note that other federal courts, including the court in *Renteria v. Italia Foods, Inc.*, 2003 U.S. Dist. LEXIS 14698 (N.D. Ill. Aug. 21, 2003), have held that *Hoffman* is <u>not</u> limited to its facts, but rather, prohibits awards of backpay to undocumented workers regardless of whether the employer was knowing or whether the employee engaged in fraud. *See* Plaintiffs Post-Trial Memorandum at 34, fn. 48.

For all of the reasons stated above, *Hoffman* is not limited to its facts, but rather, bars all claims for backpay by undocumented workers, regardless of whether the employer was knowing or whether the employee presented false documentation.

### c. Awards of Compensatory and Punitive Damages

Plaintiffs also argue that *Hoffman* does not bar awards of compensatory and punitive damages, relying upon *Renteria v. Italia Foods, Inc.*, 2003 U.S. Dist. LEXIS 14698 (N.D. Ill. Aug. 21, 2003) and *Singh v. Jutla & C.D. & R Oil, Inc.*, 214 F.Supp. 3d 1056, 1060-61 (N.D. Cal. 2002). First, neither of these case constitutes binding authority. Second, as discussed above in section 1.b., punitive damages should not be available for FLSA or New York Labor Law retaliation claims, regardless of the employee's immigration status.

Third, in finding that compensatory and punitive damages are available, *Renteria* and *Singh* purported to rely upon the *Hoffman* Court's recognition that injunctive and declaratory relief could be awarded regardless of the employees immigration status. *Renteria*, 2003 U.S. Dist. LEXIS 14698, at *19; *Singh*, 214 F.Supp.3d at 1061. However, the relief awarded in *Hoffman* was orders that the employer cease and desist its violations of the NLRA, and that it conspicuously post a notice to employees setting forth their rights under the NLRA and detailing its prior unfair practices, with the employer subject to contempt proceedings should it fail to comply with these orders. *Hoffman*, 535 U.S. at 152. The Court in *Hoffman* stated, "We have deemed such 'traditional remedies' sufficient to effectuate national labor policy regardless of whether the 'spur and catalyst' of backpay accompanies them." *Id.* Thus, *Hoffman* does not support the awarding of back pay, compensatory damages or punitive damages, but rather, holds that orders constituting injunctive or declaratory relief are adequate to meet the law's goals.

### d. New York Labor Law Claims

There are no cases deciding the availability of back pay and other remedies to undocumented workers under New York Labor Law § 215. However, the Court should interpret the relief to be

11

awarded for retaliation claims New York Labor Law § 215 consistently with the relief to be awarded under the FLSA retaliation provisions. *Oi Kwan Lai v. Eastpoint Int'l, Inc*., 2002 U.S. Dist. LEXIS 6374, at *15 (S.D.N.Y. Jan. 2, 2002)("we look to both federal and state-law cases since plaintiff's retaliation claim under section 215 of the New York Labor Law parallels the pertinent FLSA provisions and authorizes the same type of relief."). This is in keeping with the general approach of interpreting the FLSA and New York Labor Law consistently with each other. *See Ling Nan Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 78-79 (2d Cir. 2003) (applying same analysis to New York Labor Law as to FLSA with regard to the definitions of employer and employee); *Topo v. Dhir*, 2004 U.S. Dist. LEXIS 4134, at *3-4, (S.D.N.Y. Mar. 16, 2004)(noting that there is "general support for giving FLSA and the New York Labor Law consistent interpretations"); *Ansoumana v. Gristede's Operating Corp*., 255 F. Supp. 2d 184, 189 (S.D.N.Y. 2003)("because New York Labor Law and the FLSA embody similar standards…, I will consider the federal law in deciding whether defendants were joint employers").

In addition, as discussed above, other cases deciding on the availability of damages for work injury claims under New York law (*Affordable Housing* and *Balbuena*) or for unpaid wages (*Rengifo*) under New York law are not applicable to the instant case, not only because different statutes are at issue, but also because different policies are implicated. *See* sections 2a and 2b, *supra.* Moreover, awarding relief for retaliation claims under New York Labor Law § 215 is much more closely analogous to awarding relief for retaliation claims under the NLRA, as in *Hoffman*, than either of these situations.

Thus, the relief to be awarded for retaliation claims under New York Labor Law § 215 should be interpreted consistently with the relief to be awarded for retaliation claims under the

12

FLSA. More specifically, the Court should find that punitive damages are not available regardless of the Plaintiffs' immigration status, and that reinstatement, front pay, and back pay are not available for undocumented workers.

### 3. Evidence on Immigration Status Must Be Received and Considered

For the reasons discussed above, undocumented workers are not entitled to back pay, reinstatement, front pay, or punitive damages under the FLSA or New York Labor Law retaliation provisions. Thus, the Court should receive evidence as the Plaintiffs' immigration status in determining whether any of them are entitled to relief. Even if the Court finds that *Hoffman* is limited to its facts and only bars backpay awards where the employer was unknowing and the employee presented fraudulent documents, the Court must receive evidence regarding the circumstances in this case. Specifically, the Court must receive evidence on whether the Plaintiffs who are to be awarded relief on the retaliation claims are documented, whether those employees presented false documents regarding their immigration status, and whether Defendants knew those employees were undocumented.

Plaintiffs attempt to argue that all of these facts have already been proven in their favor. *See* Plaintiffs' Post-Trial Memorandum at 35. Plaintiffs assert, without any citation to the record or any other form of evidence, that "Defendants were very clearly 'knowing employers,'" and that Defendants "knew [the workers] were from China and spoke no English." *Id.* Plaintiffs also rely upon their "common knowledge that many restaurants in New York draw from a pool of undocumented workers," without any proof that this generalization can be applied to Defendants. *Id.* Plaintiffs cite to the testimony of one employee and the declarations of many others in support of their claim that Defendants "made no effort to comply with IRCA by obtaining I-9 forms or

13

identification from Plaintiffs, who they knew were from China and spoke no English." *Id.* However, Plaintiffs should not be permitted to claim the benefit of their motion in limine by barring Defendants from introducing any evidence regarding their immigration status but on the other hand introducing and relying upon evidence that Defendants did not meet their obligations with regard to verifying the employees' immigration status. As Plaintiffs note in their Reply to Defendants' Post-Trial Memorandum, "[p]ursuant to the Court's ruling on Plaintiffs' *motion in limine*, there was no evidence relating to Plaintiffs' immigration status." Plaintiffs' Reply to Defendants' Post-Trial Memorandum at 4. Thus, the Court may not rely upon Plaintiffs' arguments on this issue, but rather, must receive evidence from both sides regarding whether the Plaintiffs who are to be awarded relief on the retaliation claims are documented, whether those employees presented false documents regarding their immigration status, and whether Defendants knew those employees were undocumented.

In addition, as the Second Circuit noted in *Affordable Housing Foundation*, "although New York allows juries to compensate injured undocumented workers for lost United States earnings, it instructs them to consider the workers' removeability in calculating what, if any, compensation to award." 369 F.3d at 248. The issue of removeability refers to whether the employee is subject to imminent deportation hearings such that the employee is unlikely to remain in this country throughout the period of claimed lost income. *Hocza v. The City of New York*, 2009 U.S. Dist. LEXIS 3574, at *6-7 (S.D.N.Y. Jan. 19, 2009). Thus, if the Court were to award damages for retaliation under New York Labor Law § 215, it should also receive evidence on and consider the workers' removability.

**CONCLUSION**

As discussed in detail above, the Court should not award back pay, reinstatement, front pay, or punitive damages under the FLSA or New York Labor Law retaliation claims to any Plaintiff who is undocumented. Accordingly, the Court should receive and consider evidence as to the Plaintiffs' immigration status prior to making any determinations regarding the relief to be awarded on the retaliation claims.

Dated: White Plains, New York
   February 27, 2009        Yours, etc.,
                  **SAPIR & FRUMKIN LLP**

                By: /s/ William D. Frumkin
                    William D. Frumkin (WF 2173)
                    Attorneys for Plaintiff
                    399 Knollwood Road, Suite 310
                    White Plains, New York 10603
                    (914) 328-0366

F:\APPLICAT\WP\Saigon Grill, et al\Supp Briefing on Retaliation Damages.wpd\rlh\dp\rlh