UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

YU G. KE, SHU HUA CHEN, JIAN L. LIN, BAO J.
CHEN, GUO Q. CHEN, JIAN Y. CHEN, JIE CHEN,
MING H. CHEN, SHU HUI CHEN, SHU JIAN CHEN,
SHU JIN CHEN, WEN D. CHEN, WEN Z. CHEN, XIAN
Y. CHEN, XIANG Y. CHEN, GUO Q. CHEN, DE S. CHI,
LIAN G. CHI, ZHAO Y. DONG, XUE Y. HUANG, BING
X. LI, QIANG H. LI, QI H. LIAN, LI Q. LIN, MING LIN,
XIN W. LIN, YI L. LIN, BAO G. XIE, DE K. XIE, MU L.
XIE, RUI G. XIE, ZHI G. XIE, RUI H. YOU, YU M. YU,
WEN R. ZHENG, and YU X. ZHOU,       : No. 07 Civ. 2329 (MHD)

                Plaintiffs,

        - against -

SAIGON GRILL, INC., SAIGON GOURMET
RESTAURANT INC., SAIGON SPICE INC., SAIGON
BRASSERIE INC., SAIGON WEST INC., SIMON NGET
a.k.a. CHANG S. NGET, MICHELLE LU NGET a.k.a. PEI
YING NGET, LEANA NGET, RICHARD K. NGET a.k.a.
CHANG HAO NGET, and SUNG TRUONG,

                Defendants.

----------------------------------------------------------x

## PLAINTIFFS' REPLY TO DEFENDANTS' SUPPLEMENTAL POST-TRIAL BRIEF

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017

ASIAN AMERICAN LEGAL DEFENSE
  AND EDUCATION FUND
99 Hudson Street
New York, New York 10038

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

| | | PAGE |
|---|---|---:|
| PRELIMINARY STATEMENT | | 1 |
| ARGUMENT | | 2 |
| I. | IN ADDITION TO STATUTORY REMEDIES, PLAINTIFFS WHO WERE RETALIATED AGAINST ARE ALSO ENTITLED TO PUNITIVE DAMAGES | 2 |
| II | PLAINTIFFS ARE ENTITLED TO DAMAGES FOR RETALIATION WITHOUT REGARD TO IMMIGRATION STATUS | 5 |
| | A. Hoffman Does Not Extend to Suits Against "Knowing Employers" | 5 |
| | B. Hoffman Does Not Preclude All Remedies to Undocumented Workers Who Have Been Retaliated Against | 7 |
| III. | EVIDENCE RELEVANT TO THE COURT'S DETERMINATION OF RETALIATION DAMAGES | 8 |
| CONCLUSION | | 10 |

Plaintiffs respectfully submit this reply memorandum in response to Defendants' Supplemental Post-Trial Brief and in accordance with the Court's February 2, 2009 endorsed order.

## PRELIMINARY STATEMENT

In its October 20, 2008 Memorandum and Order, this Court found that Defendants violated FLSA and New York Labor Law by firing twenty-two Plaintiffs in retaliation for their intention to file a FLSA complaint. Ke v. Saigon Grill, Inc., No. 07 Civ. 2329 (MHD), 2008 U.S. Dist. LEXIS 86300, at *55-59 (S.D.N.Y. Oct. 20, 2008). Pursuant to the Court's ruling at the start of trial, the relief portion of Plaintiffs' retaliation claims was bifurcated and postponed pending a follow-up proceeding. Id. at *60.

There are two outstanding issues relating to the relief portion of Plaintiffs' retaliation claims. First, the Court must determine whether, in addition to the statutory remedies provided under FLSA and New York Labor Law, Plaintiffs are entitled to punitive damages for their retaliation claims. Second, the Court must decide whether Plaintiffs' immigration status—evidence of which was excluded from trial—should affect the nature or the scope of relief available to them.

Defendants advance several arguments—all of which are without merit—for why the Court should not award damages to Plaintiffs for their retaliation claims. First, Defendants argue that as a matter of law Plaintiffs are not entitled to punitive damages. This position is plainly inconsistent with well-reasoned case law in this Circuit which provides that punitive damages for retaliation are available in addition to the statutory remedies under FLSA and New York Labor Law. Notably, Defendants do not—and cannot reasonably—dispute the conduct in this case

justifying an award of punitive damages. The evidence is overwhelming and uncontroverted that Defendants willfully disregarded Plaintiffs' legal rights by threatening them and ultimately firing them in retaliation for their decision to initiate this action.

Defendants also mistakenly rely on Hoffman Plastic Compounds, Inc. v. NLRB, 535 U.S. 137 (2002), as a basis for arguing that any remedies Plaintiffs are seeking for their retaliation claims are foreclosed on account of their immigration status. This argument relies on an exceedingly broad reading of Hoffman that is inconsistent with the facts in this case, the rationale underlying the Supreme Court's decision in Hoffman, and federal immigration policy as expressed by Congress in the Immigration Reform and Control Act of 1986, 8 U.S.C. § 1324 et seq. ("IRCA").

Accordingly, Plaintiffs are entitled to backpay and punitive damages for their retaliation claims, without regard to immigration status.

## ARGUMENT

### I. IN ADDITION TO STATUTORY REMEDIES, PLAINTIFFS WHO WERE RETALIATED AGAINST ARE ALSO ENTITLED TO PUNITIVE DAMAGES

In addition to the statutory remedies available under FLSA and New York Labor Law, Plaintiffs may also recover punitive damages for their retaliation claims. Defendants attempt to divert attention from the well-reasoned holding in Sines—consistent with that of a majority of circuit courts to have addressed the issue—that "punitive damages are available under the FLSA." Sines v. Serv. Corp. Int'l, 03 Civ. 5465 (SC), 2006 U.S. Dist. LEXIS 82164, at *4-10 (S.D.N.Y. Nov. 8, 2006) (affirming jury's award of $130,000 in punitive damages on top of an award of approximately $65,000 in backpay and liquidated damages); see also Travis v. Gary Cmty. Mental Health Ctr., Inc., 921 F.2d 108, 111-12 (7th Cir. 1990) (stating that compensatory, punitive, and emotional distress damages are available); Lambert v. Ackerley, 180 F.3d 997,

1011 (9th Cir. 1999) (stating that "the Seventh Circuit's reasoning [in Travis] is persuasive"). Moreover, the court in Sines expressly disavowed the Eleventh Circuit's reasoning in Snapp v. Unlimited Concepts, Inc., 208 F.3d 928 (11th Cir. 2000), upon which Defendants rely, as "unpersuasive" and "patently not based upon anything that can be characterized as an express indication by Congress that punitive damages are not available." Id. at *7-8.[1]

Defendants' assertion that punitive damages are generally found to be unavailable when not specifically provided for by the relevant statute runs counter to the well-established canon that courts must "presume the availability of all appropriate remedies unless Congress has expressly indicated otherwise." Franklin v. Gwinnett County Pub. Sch., 503 U.S. 60, 66 (1992). Furthermore, the legislative history and plain language of § 216(b)—which provides "for such legal or equitable relief as may be appropriate . . . including *without limitation* . . . " (emphasis added)—evince Congress's intent to give courts broad discretion in fashioning relief for employees who are retaliated against, including, when appropriate, awarding punitive damages.[2] See Sines, 2006 U.S. Dist. LEXIS 82164 at *5-7 (citing Travis, 921 F.2d at 111-112).

---

[1] Defendants also cite to several district court cases outside of this district in support of their position. Glorioso v. Williams, 130 F.R.D. 664 (E.D. Wis. 1990) was decided before the 7th Circuit's decision in Travis and should, therefore, be given no weight as it has been effectively overruled. The only other cases cited by Defendants are from the Eastern District of Missouri and are not controlling. One of those, Waldermeyer v. ITT Consumer Fin. Corp., 782 F. Supp. 86, 88 (E.D. Mo. 1991), states that punitive damages are unavailable without any discussion and cites to Glorioso as its only support. Huang v. Gateway Hotel Holdings, 520 F. Supp. 2d 1137, 1144-45 (E.D. Mo. 2007), merely states that FLSA does not provide for punitive damages in its conclusion that the Missouri public policy exception provides a narrow safeguard that is not enveloped by FLSA. The court in Tucker v. Monsanto Co., No. 4:06-CV-1815 (CEJ), 2007 U.S. Dist. LEXIS 41806, at *3 (E.D. Mo. June 8, 2007), notes that not only are the circuit courts split on this issue, district courts within the Eighth Circuit are split as well. In O'Brien v. DeKalb-Clinton Counties Ambulance Dist., No. 94-6121-CV-SJ-6, 1996 U.S. Dist. LEXIS 14636 (W.D. Mo. June 24, 1996), the court held that it was persuaded by the Seventh Circuit's reasoning in finding that punitive damages are available for violations of FLSA's anti-retaliation provision.

[2] The cases cited by Defendants for their position that punitive damages are not available when not specifically provided for by statute are inapposite, as they pertain to entirely different federal statutes where there are clear and independent reasons why a court would not award punitive damages. The ERISA statute Defendants cite contains a remedial provision that, on its face, is worded more narrowly than § 216(b). See 29 U.S.C. § 1132(a)(1)(B) (stating that an ERISA action may be brought "to recover benefits due to [the plaintiff] under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the (...continued)

Furthermore, although the court in Sines did not need to address the availability of punitive damages under New York Labor Law, 2006 U.S. Dist. LEXIS 82164 at *4, such damages are also available. Indeed, a court in this district recently awarded punitive damages for a retaliation claim under New York Labor Law § 215. See Lin v. Hayashi Ya II, Inc., No. 08 Civ. 6071 (SAS) (AJP), 2009 U.S. Dist. LEXIS 12963, at *27-28 (S.D.N.Y. Jan. 30, 2009) (approving punitive damage awards of $5,000 to each plaintiff for their retaliation claims under New York Labor Law).

Significantly, Defendants do not dispute the underlying conduct in this case warranting the imposition of punitive damages. As the Court found in its October 20, 2008 Memorandum and Order

> The Ngets learned about the intention of some of their deliverymen to pursue FLSA claims—just as a group of deliverymen at another establishment had recently done—and as a result they gathered the men together, offered them increased wages if they agreed not to pursue such claims, and warned them that they would be fired if they did not abandon their litigation plans. The Ngets then acted on their threat, terminating the deliverymen when none was willing to sign the paper that Simon Nget was holding up, a document that we infer constituted a waiver of claims.

See Ke, 2008 U.S. Dist. LEXIS 86300, at *55. Such conduct clearly demonstrates Defendants' "reckless or callous indifference to the federally protected rights of others," and thereby justifies the imposition of punitive damages in this case. See Smith v. Wade, 461 U.S. 30, 56 (1983).[3]

---

(continued...)
terms of the plan"). Interpretations of the statutory language in the ADEA similarly are not persuasive because liquidated damages under the ADEA serve a punitive purpose, making it unnecessary for "legal relief" to encompass punitive damages. See Trans World Airlines, Inc. v. Thurston, 469 U.S. 111 (1985) ("The legislative history of the ADEA indicates that Congress intended for liquidated damages to be punitive in nature."). Liquidated damages under FLSA, however, serve a compensatory rather than punitive purpose. Ke, 2008 U.S. Dist. LEXIS 86300, at *52-53.

[3] The same standard for awarding punitive damages should apply to Plaintiffs' claims for retaliation under state law. See Greenbaum v. Svenska Handelsbanken, 979 F. Supp. 973, 983 (S.D.N.Y. 1997) (noting in Title VII case that the substantive standard for punitive damages is the same under federal and state law).

For these reasons, the Court should award punitive damages to all Plaintiffs who were retaliated against.

## II. PLAINTIFFS ARE ENTITLED TO DAMAGES FOR RETALIATION WITHOUT REGARD TO IMMIGRATION STATUS

### A. <u>Hoffman</u> Does Not Extend To Suits Against "Knowing Employers"

Defendants contend that the Supreme Court's holding in <u>Hoffman</u> bars any award of backpay to undocumented workers who are retaliated against.[4] Plaintiffs do not dispute the core holding in <u>Hoffman</u>, but maintain that the policy rationale underlying the Supreme Court's decision in <u>Hoffman</u> does not support its extension to cases like this one, where the only parties to violate IRCA were Defendants, by failing to inquire into Plaintiffs' immigration status or employment eligibility. See generally Pls.' Post-Trial Mem. at 32-36.

In <u>Hoffman</u>, the Supreme Court concluded that allowing the Board to award backpay to an undocumented worker who obtained employment with false documents would unduly trench upon federal immigration policy, as expressed by Congress in IRCA. See <u>Hoffman</u>, 535 U.S. at 147. Specifically, IRCA seeks to deter the employment of illegal aliens—and, in turn, illegal immigration—by: (i) mandating that employers verify the immigration status of their employees; (ii) making it a crime for employers to knowingly hire and employ undocumented aliens; and (iii) criminalizing the act of presenting false documents to an employer. See <u>id.</u> at 147-48. Under IRCA, "it is impossible for an undocumented alien to obtain employment in the United States without some party directly contravening explicit congressional policies." <u>Id.</u> at 148.

---

[4] Defendants' discussion of the availability of reinstatement and front pay is purely academic since Plaintiffs are only seeking backpay and punitive damages in connection with their retaliation claims. See <u>Ke</u>, 2008 U.S. Dist. LEXIS 86300, at *3-4. Similarly, Defendants' decision to revisit the basis for Plaintiffs' *motion in limine* is not appropriate at this juncture because the Court's ruling only excluded evidence regarding Plaintiffs' immigration status in connection with its determination of Defendants' liability for unpaid wages under FLSA. See Trial Tr. 5:6-7:19.

The salient factor underpinning the Supreme Court's decision in Hoffman was that it was the employee who violated IRCA by presenting false documents to obtain employment. See id. at 149 ("What matters here, and what sinks both of the Board's claims, is that Congress has expressly made it criminally punishable for an alien to obtain employment with false documents.").

This case is clearly distinguishable from Hoffman, despite Defendants' claims to the contrary. The *only* parties to violate IRCA in this case were Defendants, who failed to make any effort to verify Plaintiffs' immigration status or eligibility, despite their knowledge that Plaintiffs were from China and spoke no English.[5] See Ke, 2008 U.S. Dist. LEXIS 86300, at *11-13.

The Second Circuit and New York Court of Appeals have both distinguished Hoffman on this basis in holding that IRCA does not preclude an award of lost earnings to an undocumented worker under New York Labor Law. See Affordable Hous. Found., Inc. v. Silva, 469 F.3d 219, 236-37 (2d Cir. 2006) (recognizing that cases involving a "knowing employer" are factually distinguishable from Hoffman, and "do not present the same concern for subversion of federal immigration law"); Balbuena v. IDR Realty LLC, 6 N.Y.3d 338, 360 (2006) ("Hoffman is dependent on its facts, including the critical point that the alien tendered false documentation that allowed him to work legally in this country.").

Defendants, failing to cite any case law in this Circuit to the contrary, attempt to distinguish Affordable Housing Foundation and Balbuena on the basis that both cases dealt with lost earnings due to a work injury under New York Labor Law. This distinction does not diminish the significance of the courts' holdings in which they expressly declined to extend

---

[5] Notably, IRCA does not make it a crime to work without documentation. See Affordable Hous. Found., Inc. v. Silva, 469 F.3d 219, 231 (2d Cir. 2006); Balbuena v. IDR Realty LLC, 6 N.Y.3d 338, 360 (2006).

Hoffman to cases, like this one, where an employer has disregarded his obligation to verify the eligibility of workers who did not offer fraudulent documentation.[6] Extending Hoffman to such cases would undermine IRCA's basic objective, by incentivizing employers to hire undocumented workers who—given the unavailability of backpay—would be less likely to report labor law violations. See Hoffman, 535 U.S. at 155-56 (Breyer, J., dissenting); see also Balbuena, 6 N.Y.3d at 359 ("An absolute bar to recovery of lost wages by an undocumented worker would lessen the unscrupulous employer's potential liability to its alien workers and make it more financially attractive to hire undocumented aliens.").

Therefore, Hoffman does not preclude the Court's award of backpay in this case.

### B. Hoffman Does Not Preclude All Remedies To Undocumented Workers Who Have Been Retaliated Against

There is no support for Defendants' claim that Hoffman should be read broadly to preclude undocumented workers who have been retaliated against from recovering traditional legal remedies such as compensatory and punitive damages. Hoffman only considered the specific remedy of backpay, and did not address the availability of compensatory and punitive damages which are outside of the "traditional remedies" available to the Board under the National Labor Relations Act, 29 U.S.C. §§ 151 et seq. ("NLRA"). See Hoffman, 535 U.S. at 152.

Moreover, even courts that have found backpay unavailable have concluded that other remedies such as compensatory and punitive damages are still available to undocumented workers who are retaliated against. See Renteria v. Italia Foods, Inc., No. 02 C 495, 2003 U.S.

---

[6] Lacking any apparent basis for their position, Defendants fail to even address the substance of the decisions and orders of Administrative Law Judges in NLRB proceedings that have reached similar conclusions. See Handyfat Trading, Inc., N.L.R.B. No. 29-CA-28181, 2007 WL 2371977 (Aug. 14, 2007); Mezonos Maven Bakery, Inc., N.L.R.B. No. 29-CA-25476, 2006 WL 3196754 (Nov. 1, 2006).

Dist. LEXIS 14698, at *19 (N.D. Ill. Aug. 21, 2003) (finding compensatory damages available to undocumented workers who were retaliated against because "[t]he remedy of compensatory damages, unlike those of back pay and front pay, does not assume the undocumented worker's continued (and illegal) employment by the employer"); Singh v. Jutla & C.D. & R. Oil, Inc., 214 F. Supp. 2d 1056, 1061 (N.D. Cal. 2002) ("While Hoffman did not address the remedies of compensatory and punitive damages . . . given the factual circumstances of this case and the interplay with national immigration policy, the Court declines to extend Hoffman to bar the remedies that plaintiff seeks.").[7]

Accordingly, even if the Court should determine that Plaintiffs' immigration status is relevant to its determination of retaliation damages, all Plaintiffs are still entitled to recover compensatory and punitive damages for their retaliation claims.

### III. EVIDENCE RELEVANT TO THE COURT'S DETERMINATION OF RETALIATION DAMAGES

For the reasons stated above, Plaintiffs maintain that their immigration status is not relevant to the Court's determination of the damages to be awarded on Plaintiffs' retaliation claims. Plaintiffs have already submitted calculations of damages for those Plaintiffs asserting claims for retaliation. See Ex. A to Pls.' Post-Trial Mem.[8]

---

[7] Although there are no cases deciding the availability of backpay and other remedies to undocumented workers under New York Labor Law § 215, should the Court determine that Plaintiffs' immigration status is relevant to its determination of retaliation damages under FLSA, it does not necessarily follow, as Defendants contend, that the Court must adopt a similar approach with respect to Plaintiffs' retaliation claims under New York Labor Law. In fact, New York Labor Law, by covering a broader range of protected activities, provides employees greater protection from retaliation than provided by FLSA. See N.Y. Lab. Law §215(1) (protecting employees from retaliation not only when they institute formal proceedings or are in the process of doing so, as under FLSA, but also when they merely complain to their employers about labor law violations). Additionally, as stated above, New York courts have upheld the rights of undocumented workers to recover lost earnings in the case of a "knowing employer." See Balbuena, 6 N.Y.3d at 360; see also Affordable Housing, 469 F.3d at 231.

[8] Nonetheless, should the Court determine that information regarding Plaintiffs' immigration status is relevant to an award of damages for their retaliation claims, Plaintiffs will submit this information to the Court through a stipulation or offer of proof.

There is no basis for Defendants' claim that the Court must receive evidence on whether Plaintiffs presented false documents regarding their immigration status. See Defs.' Supp. Post-Trial Br. at 13. This issue has already been conclusively determined by this Court, which found that "[w]hen hiring plaintiffs, the defendants did not request work or immigration papers from them." Ke, 2008 U.S. Dist. LEXIS 86300, at *12-13. Moreover, the Court's *in limine* ruling, which precluded Defendants from inquiring into Plaintiffs' immigration and tax status, did not preclude Defendants from introducing evidence regarding their own compliance with IRCA. (See Trial Tr. 5:6-7:19). Defendants could have—but chose not to—introduced evidence to refute Plaintiffs' testimony on this point.

Finally, there is similarly no basis for Defendants' request that the Court receive evidence regarding Plaintiffs' removability. As an initial matter, immigration status is not relevant to the Court's determination of the relief portion of Plaintiffs' retaliation claims. Second, even if the Court should determine that immigration status is relevant, the issue of removability is entirely irrelevant. As Defendants acknowledge, removability is only relevant to "whether the employee is subject to imminent deportation hearings such that the employee is unlikely to remain in this country throughout the period of claimed lost income." Defs.' Supp. Post-Trial Br. at 14. The period of claimed lost income in this case is March 2, 2007, when Plaintiffs were terminated, through March 1, 2008, when Defendants offered to reinstate Plaintiffs. Ke, 2008 U.S. Dist. LEXIS 86300, at *28-29; see generally Pls.' Post-Trial Mem. Ex. A. No Plaintiffs were subject to imminent deportation during this time, as evidenced by the fact that all Plaintiffs asserting retaliation claims testified at the trial which commenced on June 23, 2008—several months after the period of claimed lost income.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully renew their request that the Court award backpay and punitive damages to all Plaintiffs with retaliation claims, without regard to immigration status.

Dated: New York, New York
March 6, 2009

                                DAVIS POLK & WARDWELL

By: /s/ Jonathan L. Adler
     Ronnie Abrams
     Jonathan L. Adler
     Matteo J. Rosselli
     William R. Miller
     450 Lexington Avenue
     New York, New York 10017
     jonathan.adler@dpw.com
     (212) 450-4000

     Kenneth Kimerling
     Asian American Legal Defense
       and Education Fund
     99 Hudson Street
     New York, New York 10038
     (212) 966-5932

     *Attorneys for Plaintiffs*